### J. S. ADAMS v. THE STATE.

#### No. 1579.   Decided December 13, 1911.

#### Rehearing Denied April 3, 1912.

**1.—Retail Liquor Dealer—License—Sale.**

   Where defendant was prosecuted for retailing intoxicating liquors in non-local option territory without license, and it appeared that he was a member of an incorporated club and sold the liquor to members only for said club at the usual and customary price, this constituted a sale.   Following Feige v. State, 49 Texas Crim. Rep., 513, and other cases.

**2.—Same—Selling Intoxicating Liquor—License—Chartered Clubs.**

Where defendant was prosecuted for selling intoxicating liquors by retail in nonlocal option territory without license, and the evidence showed that he was a bona fide member of an incorporated club who only sold liquors to members of said club, he was not guilty under the law. Following Duke v. State, 137 S. W. Rep., 654, and other cases.

**3.—Same—Statutes Construed—Judicial Construction—Business.**

Where, under the former statute, bona fide chartered clubs who sold or dispensed liquors to their members only were held not to be retail liquor dealers by the courts of last resort, and a subsequent statute provided that chartered clubs or incorporated companies can not procure a license to engage in the business of retail liquor dealers, it must be presumed that the Legislature did not intend to levy a tax on them for so doing, and that the Legislature intended to levy a tax only on those making sales of intoxicating liquors as a business. Following Duke v. State, 137 S. W. Rep., 654, and other cases.

**4.—Same—Statutes Construed—Retail Liquor Dealer.**

Where one sells intoxicating liquors by making one sale, he is not thereby constituted a retail liquor dealer, nor is a bona fide club selling or dispensing liquor to its members a retail liquor dealer. Following Cassidy v. State, 58 Texas Crim. Rep., 454, and other cases.

**5.—Same—Change of Law—Statutes Construed.**

The mere change of phraseology in the revision of the statutes before enforced will not work a change of the law previously declared, unless it indisputably appears that such was the intention of the Legislature. Following Cargill v. Kountze, 86 Texas, 386, and other cases.

**6.—Same—Sunday Law—Election.**

Where defendant was prosecuted for retailing intoxicating liquors without license in non-local option territory, the question of a violation of the Sunday law or the election law is not involved and no opinion is expressed.

**7.—Same—Case Stated—Clubs.**

Bona fide clubs organized for legitimate purposes who sell or dispense liquor to their members alone, as a mere incident to their organization, and not as a business for profit, are not required or permitted to take out a license to thus sell liquors upon such days upon which such sales are permitted.

Appeal from the County Court of Dallas County at Law. Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of unlawfully retailing intoxicating liquors in nonlocal option territory without license; penalty, a fine of $250 and confinement in the county jail for one day.

The opinion states the case.

*Walker & Williams* and *C. F. Greenwood* and *Robert B. Allen,* for appellant.—Besides the cases cited in opinion, cited on the right of chartered clubs to sell liquor: Cuzner v. Cal. Club, 155 Cal., 303; State v. St. Louis Club, 28 S. W. Rep., 604; Klein v. Livingston Club, 34 L. R. A. (N. S.), 94; People v. Adelphi Club, 43 N. E. Rep., 410; State v. Mont. Club, 11 L. R. A., 593; State v. Boston Club, 20 L. R. A., 185; Tennessee Club of Memphis v. Dwyer, 47 Am. Rep., 298.

*C. E. Lane,* Assistant Attorney-General, and *R. M. Clark,* County Attorney, and *Currie McCutcheon,* Assistant County Attorney, for the State.—Under the Act of the Thirty-First Legislature, section 2, it is provided: Any person who sells intoxicating liquors in quantities less than one gallon shall be governed by the provisions of this law and be required to take out license thereunder, and, therefore, the former decisions as to chartered clubs under the old law do not apply under the present law, as different words are used in the reenactment of the statute: Burgess v. Hargrove, 64 Texas, 110; Rich v. Keyser, 54 Pa. St., 86; S. A. & A. P. Ry. Co. v. S. W. T. & T. Co., 55 S. W. Rep., 117; Schley v. Hale, 1 App., C. C., par., 933.

On the question of the right of bona fide social clubs to sell intoxicating liquors to its members without license: Martin v. State, 59 Ala., 34: Marmont v. State, 48 Ind., 21; Ky. Club v. Louisville, 92 Ky., 309; State v. Easton Social Club, 72 Md., 297; Com. v. Ewig, 145 Mass., 119; State v. Tindall, 40 Mo. App., 271; State v. Lockyear, 95 N. C., 633; Tenn. Club. v. Dwyer, 11 Lea, 452; People v. Soule, 74 Mich., 250; Newark v. Essex Club, 53 N. J. L., 99; Mohrman v. State, 105 Ga., 709; District of Columbia Army Club v. D. C., 8 App. (D. C.), 544; U. S. v. Giller, 54 Fed., 656; Joice on Intoxicating Liquors, chapter 22, page 628.

HARPER, JUDGE.—Appellant was prosecuted under complaint and information, charging that appellant "J. S. Adams, in the county and State aforesaid, on the 24th day of September, A. D. 1911, in a certain locality in said county and State where local option was not then and there in force, did then and there unlawfully sell, directly and indirectly malt liquors capable of producing intoxication in quantities of one gallon and less than one gallon, without taking out a license as a retail malt dealer under the laws of the State of Texas, he the said J. S. Adams, not being then and there a retail liquor dealer under the laws of the State of Texas, and not then and there having taken out a license as a retail liquor dealer under the laws of the State of Texas, and he the said J. S. Adams did then and there unlawfully sell malt liquors capable of intoxication, to wit, one pint bottle of beer to T. B. Kendall, and one pint bottle of beer to Dan Lahue."

The agreed statement of facts shows that appellant was the acting steward of the Pastime Driving & Athletic Club, a corporation chartered under the laws of the State of Texas, its articles of incorporation reading: "The name of this corporation shall be 'Pastime Driving & Athletic Club.' The purpose of this corporation shall be for the support and maintenance of innocent sports. Its business shall be transacted in Dallas County, the State of Texas. This corporation shall exist for a period of twenty-five years from the date hereof. The directors of said corporation shall be five in number and those appointed for the first year are as follows: Karl C. Rath, J. B. Simpson, Henry Menczer, J. W. Gardner, and John Leonard, all of whom reside in

Dallas County, Texas. This corporation shall have no capital stock and no profit shall be made by said corporation."

This charter is dated June 22, 1906, and this club has been in existence since said date. It is agreed that:

"The purpose for which the corporation was created and organized is 'in the support and maintenance of innocent sports.' Shortly after its organization the corporation leased and improved a plat of land on the west side of Exposition Avenue in the city of Dallas, now used by it, and used by it on September 24, 1911, for a club house and grounds; the grounds consisted of about two (2) acres of land which lies wholly within the limits of the city of Dallas, and without the saloon limits of the city of Dallas.

"The club erected a club house on the grounds for the convenience of the members in 1906, the club house being thirty-two by fifty feet in size. During the same year the club also erected two summer houses for athletic sports, one of which was thirty-two by seventy-five feet in dimensions, and the other forty-two by forty-two feet in dimensions. The clubhouse is provided with a complete outfit for athletic sports, including horizontal bars, parallel bars, dumb bells, Indian clubs, trapezes, ring trapezes, wrestling mats, and a variety of other mats, used for the protection of the members in their athletic exercises; also a rowing machine, several pairs of boxing gloves, wall exercisers, wall ladders and shower baths. A cafe was also established in the main club room for the purpose of furnishing meals and lunches to the members of the club, and in connection with the cafe a buffet was provided for the purpose of furnishing drinks to the members of the club.

"The club house and all of the equipment therein, together with the cafe and buffet, are used exclusively by members of the club and out of town guests; no guests are allowed in the club rooms who reside in the city of Dallas, but members are permitted to bring out of town friends who are visiting in the city, to the club rooms as guests, but no guest is allowed to pay for anything in the club rooms, either at the cafe or the buffet. No sale of drinks was ever made to any person except to members of the club.

"The club uses a quantity of household and kitchen furniture in the cafe, sitting room and summer houses, and maintains a steward and an assistant steward, and two porters; the club maintains the cafe for the service of meals and lunches if called for by, and only by, its members, and for the sole use of themselves and their invited guests, but no guest is permitted to pay for anything under any circumstances.

"The club is composed of 498 members, and has a limit of 600 members. The defendant, J. S. Adams, is now a member, and was a member of the club on September 24, 1911, and long prior thereto.

"Since the date of the incorporation of the club it has from time to time purchased in bulk, quantities of spirituous, vinous and malt liquors capable of producing intoxication; and through its authorized

agents and employees retailed the same to its members in quantities of one gallon and less than one gallon, at an agreed price per drink, and has continuously so done to date. Spirituous, vinous and malt liquors were kept for sale at the club on September 24, 1911, to be sold exclusively to the members of the club. Each member of the club pays for the quantity of spirituous, vinous and malt liquors that he calls for and consumes. Only members of the club are permitted to purchase in any quantity from the club or its agents or employees, the liquors, but members are permitted, and do invite out of town friends, who are visiting in Dallas, to the club and these invited guests are permitted to drink liquors with the club members, but the guests are not permitted under any circumstances to pay for same. The members purchase the liquors, and not the guests.

"Neither the club, nor any of its officers, directors, agents or employees, have paid the annual tax levied on every person by the State of Texas, who sells or keep for sale, spirituous, vinous or malt liquors, capable of producing intoxication. On September 24, 1911, and prior to that time, the club had not, and has not now, a license under the laws of the State of Texas, and neither has any of its officers, directors or members, a license under the laws of the State of Texas, to retail liquors at the club house of the Pastime Driving & Athletic Club. The club has continuously since its incorporation, paid internal revenue license to the United States, as a retail liquor dealer. And that on the date alleged in the information he sold to the parties named the beer alleged to have been sold, and collected therefor the sum of fifteen cents per bottle, which he placed in the treasury of the club."

The questions presented for our consideration are but two: Did the transaction constitute a sale within the meaning of our laws, and if it constituted a sale, was appellant, or the club for whom he was acting, liable to pay the tax levied upon those engaged in selling intoxicating liquors. The evidence shows that the incorporated club purchased liquors in bulk, with money in the treasury, and sold or dispensed the liquors to its members at the usual or customary price. This we think constitutes a sale under all the rules of law. If any given number of persons organize an association under any name whatsoever with the understanding and agreement that such goods are to be dispensed to the members in such quantities as each may desire at the usual and customary price, the member paying only for such quantity as he receives, such transaction constitutes a sale by the association to the member. Appellant cites us to the case of State v. Austin Club, 89 Texas, 20, but a careful reading of that case will disclose that the court did not decide this question, but said:

"The question as to whether or not the transaction of dispensing liquors to the members and guests, as in this instance, constituted sales within the meaning of statutes prohibiting such sales, has been the subject of much judicial investigation, upon which there is a great conflict of authority, but that question is not involved in the case now

presented to us, and we refrain from discussing it and will not undertake to review the many authorities, bearing upon it cited by the counsel for both parties in the case."

Since that case was decided this court has been called on to specifically decide that question, and in the case of Feige v. State, 49 Texas Crim. Rep., 513, 95 S. W. Rep., 506, this court held: "In any event, according to our view, the club members, when they paid their money into the treasury, parted with it to the corporation, the corporation becoming the owner thereof; and when the corporation sent out this money it bought the beer on its own behalf in Ft. Worth, and if at any time the corporation had failed and become subject to execution, the beer and property of the same could have been seized for the debts of such corporation. When the beer was brought from Ft. Worth to Cleburne, being the property of the corporation, whenever it delivered a glass of beer to any member and received therefor five cents, it became the vendor of such glass of beer; the title to the same was parted with by the company through its manager to the vendee, and the manager of said company made a sale to such member." See also the case of Finn v. State, 38 Texas Crim. Rep., 75, 41 S. W. Rep., 1102, and the case of Krnavek v. State, 38 Texas Crim. Rep., 44, 41 S. W. Rep., 612. In the latter case, Judge Hurt, speaking for the court, said:

"The question here is whether the sale of intoxicants by the managing steward or barkeeper of the club to one of the members of said club is a sale. We are of opinion that it is. When the intoxicants were bought by the steward, or any other member of the club, with the funds of the club, they became the property of the corporation, and a sale by the steward of said corporation to any of its members was a sale, as that term is defined. It was the separation of the property of the club, and the transfer of the same to an individual member, for which he either paid the cash, or became responsible therefor. As testified in this case, this transaction between defendant and the alleged purchaser was brought fairly and clearly within the definition of 'sale,' as that term is defined in all the law books," citing many authorities.

None of the cases cited by appellant as decided by the courts of this State bear out his contention that the transaction would not be a "sale," but in them it was held they were not liable for the tax levied by the State on the business of selling intoxicating liquors.

This brings us to the second proposition: Was defendant, or the Pastime Driving & Athletic Club, in making such sales, guilty of violating the law which prohibits the sale of intoxicating liquors by anyone without first obtaining a license so to do. A careful reading of the law levying a tax on those engaged in selling intoxicating liquors will disclose that a chartered club or incorporated company can not procure license in this State to engage in the business of a retail liquor

dealer.    The Legislature at the time it passed this law, knew that, under the decisions of the Supreme Court in the Austin Club case, above referred to, and the case of Koenig v. State, 33 Texas Crim. Rep., 367, 26 S. W. Rep., 835, decided by this court, chartered clubs were engaged in selling liquors to their members in the same manner that this record discloses was being done by this club, and their action in not providing a way for them to obtain a license so to do, is a clear indication that the Legislature did not intend to levy a tax on them for so doing.    Were this an original proposition, we would take up and discuss at length, whether or not the Legislature, in not providing a way by which these clubs or incorporated companies could obtain a license to thus sell intoxicating liquors, intended to prohibit them entirely from so doing, but inasmuch as this question has been before the Supreme Court of this State (see Duke v. State, 137 S. W. Rep., 654) recently, and that court held they were not liable for the tax levied by our law, we feel inclined to follow that decision, especially so as in Austin club case and in the Koenig case the Supreme Court and this court have held under former laws that such clubs were not liable for the tax.    It is true, as contended by the State, that the laws construed in the Austin club case and Koenig case levied a tax on the business or occupation of selling intoxicating liquors, and the court held that clubs that sold to its members alone were not pursuing such occupation, and the present law is differently worded, but taking into consideration the Duke case, recently decided by the Supreme Court, construing the present law, we hold that the law intended to levy a tax on those making sales of intoxicating liquors as a business, and this appears to have been the holding of this court in the case of Cassidy v. State, 58 Texas Crim. Rep., 454, 126 S. W. Rep., 600.    In that case Cassidy was being prosecuted for selling liquor without taking out a license, and the evidence showing but one sale, the court held that "one sale of this character would not constitute a retail liquor dealer," thus holding that it is only the retail liquor dealer who is liable for the tax, or a person who does such acts as would bring him within that definition; and this court and the Supreme Court have held that a bona fide club selling or dispensing liquor to its members does not constitute it a retail liquor dealer.    Were this an original proposition, in view of the authorities from many other States cited in the brief for the State, we perhaps might arrive at a conclusion that it was intended to prohibit clubs from thus selling, but in view of the fact that the Legislature was aware that clubs of this character were selling liquors to their members in this State without paying the tax, under the authority of Koenig and Austin club cases, for us to put such a construction on this statute would not be authorized; there is no provision in the law whereby these clubs or corporations can obtain a license to thus sell or dispense liquor to its members, and we can not say that the Legislature intended such a radical change in the construction of the law when no more express terms were used to accom-

plish this purpose than are used in this statute. In the case of Ennis v. Crump, 6 Texas, 34, our Supreme Court held, in speaking of the interpretation to be given to the reenacted statute, Judge Wheeler, speaking for the court: "This statute was not intended, we think, to change the rule upon this subject as understood and practiced under the former law. That the mere change of phraseology in the revision of a statute before in force will not work a change of the law previously declared, unless it indisputably appears that such was the intention of the Legislature, has been expressly decided. (Taylor v. Delancy), 2 Caines, Cas. Ev., 143; (In re Yates), 2 Johns. (N. Y.), 317; (In re Theriat), 2 Hill (N. Y.), 380; (In re Brown), 21 Wend. (N. Y.), 316. No such intention is manifested in the present instance." "To the same effect is the declaration of our Supreme Court in the case of Cargill v. Kountze, 86 Texas, 386, 22 S. W. Rep., 1015, 25 S. W. Rep., 13, 24 L. R. A., 183, 40 Am. St. Rep., 853. In that case, speaking for the court, Judge Gaines said: 'When the Legislature reenacts a statute which has been construed by the courts the presumption is that it intended that the new enactment shall receive the same construction as the old. The rule is universal, and is conclusive of the question under consideration.'

"In the case of Supreme Council A. L. H. v. Anderson, 36 Texas Civ. App., 615, 83 S. W. Rep., 207, there is this apt statement of the rule: 'And it is a familiar rule that when the Legislature adopts a statute in force in another State, or reenacts a statute formerly in force in the particular State, it will be presumed that the construction formerly placed upon the statute by the court of last resort was known to the Legislature, and that in reenacting the statute it was the legislative intent that it should have the meaning so placed upon it by the courts.'"

Many other authorities might be cited in this and other states so holding, and in applying this well known rule of construction to this statute, in the light of the decisions of this court and of the Supreme Court on this question, no such construction should be placed on this statute as would prohibit clubs from thus dispensing or selling liquors to their members.

While the sales in this instance were made on Sunday, yet this prosecution is not based on article 199 of the statute which prohibits sales on that day, but is a prosecution for selling without first paying the tax and obtaining a license, and we pass on this question alone. A different question would be presented if appellant was prosecuted under the statute prohibiting sales on Sunday or other days in which sales are prohibited, but the question as to whether these clubs would be authorized to make sales of this character on Sunday, or election days, or other days, when our laws prohibit sales by all persons, is not before the court, and any expression on our part would be but obiter dicta, and the sole question presented in this case, and upon which we alone pass, is that bona fide clubs organized for legitimate purposes,

as in this one, who sell or dispense liquor to their members alone, as a mere incident to their organization, and not as a business for profit, are not required or permitted to take out a license to thus sell liquors, and this being true, the proper construction of the statute does not prohibit them from selling to their members as they have heretofore done on days which the laws of this State permit sales to be made.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Rehearing denied April 3, 1912.—Reporter.]