

# THE ATTORNEY GENERAL
## OF TEXAS

**GERALD C. MANN**
~~XXXXXXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

**AUSTIN 11, TEXAS**

Hon. Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:

Opinion No. O-1145
Re: Whether Acts of members of
Houston Country Club, Houston,
Texas, in operations of such club,
constitute a violation of the Texas
Liquor Control Act.

Your request for an opinion on the above stated question has been received by this department. The facts, with reference to the operations of Houston Country Club, as stated by you, are as follows:

"No person may become a participant in the Revolving Fund unless he is a member of the Club, but membership in the Club does not automatically make him a participant in the Revolving Fund. Each member of the club who desires to become a participant in the Revolving Fund is required to pay $5 into the fund, and with the fund so created liquor is purchased in packages from a regular retail store.

"The stock of liquor so purchased and belonging to the participants in the Revolving Fund is kept in the club house and the participants in the fund are entitled to make withdrawals therefrom, to be consumed as a straight drink, as a highball, as constitutents of a cocktail, or otherwise, and either on or off the premises of the Country Club. Liquor so withdrawn is served to the Revolving Fund participants by persons who are on the payroll of Houston Country Club.

"Only participants who have contributed to the Revolving Fund are permitted to make withdrawals from this liquor stock, and for each withdrawal a slip is made out which must be signed by the participant before the withdrawal is made. A participant may make withdrawals for any other person, in the same manner that he makes withdrawals for himself, -- that is, by signing his own name therefor. There is set out on the face of such slip the character of the drink,

such as whiskey, gin, highball, or martini cocktail, as the case may be, with a specified charge therefor, which depends upon the nature of the drink and the ingredients therein. At the end of each month an inventory is taken of the liquor stock and the cost value of the liquors taken from the stock during the month is determined. This amount, i.e., cost value of the liquor withdrawn, is then deducted from the total amount charged during the month against all the participants in the fund, and is put back into the fund, while the remainder is paid to the Country Club in payment for the ice, soda and personal services supplied by it to the participants in the fund.

"One of the members of the Revolving Fund handles the purchases of liquor which are necessary to replenish the stock that is owned by the participants in the fund. At the end of each calendar month the Country Club purchases from the Revolving Fund the withdrawal slips signed during that month by the participants in the fund, and collects the amount thereof from such participants in the same manner that it collects the regular club bills.

"The Houston Country Club holds wine and beer retailer's permit No. 15879, issued January 1, 1939, which is a renewal. The stock of wine and beer owned and served by the club is kept in a small building adjacent to the main building of the club. Entrance to this small store room is gained by stepping from the porch of the main building into the door of the store room. Beer and wines are served by waiters from this store room into all parts of the club house and grounds, including the spaces in which the stock of liquor owned by participants in the Revolving Fund is kept and drinks of liquor are served to such participants. The same waiters who serve wine and beer from this store room also serve drinks of liquor to the participants in the Revolving Fund. Wine and beer served by the club proper is signed for on a different type of check than that used by the Revolving Fund."

Section 3(a) of Article 1, of the Texas Liquor Control Act, defines the term "open saloon" as follows:

"The term 'open saloon' as used in this Act means any place where any alcoholic beverage whatever, manufactured in whole or in part by means of the process of distillation, or any liquor composed

or compounded in part of distilled spirits, is sold
or offered for sale for beverage purposes by the
drink or in broken or unsealed containers, or any
place where any such liquors are sold or offered for
sale for human consumption on the premises where
sold."

Subdivision (b) of Section 3, reads as follows:

"It shall be unlawful for any person, whether
as principal, agents or employees, to operate or
assist in operating, or to be directly or indirectly
interested in the operation of any open saloon in
this State."

In the case of Adkins v. State, 95 S.W., the material facts
are about as follows:

A group of men formed a club. These men in turn hired a
steward at a fixed salary. The steward ordered beer for
the members of the club and placed such beer in the club
room for them. Each member of the club paid $1.00 for a
membership and received tickets which represented his in-
terest in the beer the steward ordered. After the keg
of beer arrived at the club house a ticket was placed in
a box and a glass of beer was drawn by any member who
desired one, each ticket representing a glass of beer.
The beer which was ordered by the steward for the pur-
chasers and paid for by said purchasers. The Court of
Criminal Appeals held in this case that the facts estab-
lished a sale of beer by the steward each time that a
glass of beer was drawn by a member of the club.

In the case of Sutton v. State, 40 S.W. 501:

A certain firm kept what was known as "Temperance Hall."
Certain parties paid 50 cents for the privilege of buy-
ing beer from the firm at the ordinary retail price.
The 50 cents paid to become a member of the alleged club
was all the money ever paid into the concern, except the
usual price for beer when purchased. Such firm received
1,630 dozen bottles of beer in five months; kept the
stock replenished with the money arising from sales to
members; and its pay was the profits. The Court of Crim-
inal Appeals of this State held that this was clearly an
evasion of the local option law.

In the case of Krnavek v. State, 41 S.W. 612, the facts were
about as follows:

After the enactment of a local option law, a club
was incorporated for social and literary purposes,
and to provide the convenience of a clubroom. It
had a billiard table, a domino table and 12 books,
and took a semi-weekly paper. The club bought
large quantities of intoxicants, and employed an
ex-saloon keeper at a monthly salary to sell them
at retail to its members only, from the bar form-
erly owned by him, and the proceeds of such sale
became the property of the club. The Court of
Criminal Appeals of this State held that the club
was formed for the purpose of evading the local
option law.

In the case of Feige v. State, 95 S.W. 506:

A club was incorporated for social purposes. The
manager of such club devoted his time to the mangement
of its affairs. A membership fee of $1 was paid to him
by each member. The members of the club obtained beer
by purchasing tickets. The beer was obtained the day
after the purchase of the tickets. The manager in-
structed the members how to order beer by stating that
when the members wanted beer, the should put money in
a box and take out a ticket for each nickel, and that
could be procured at the clubroom the following night.
Held, that the club members, when they paid their
money into the treasury, parted with it to the club,
so that when it sent out the money it bought beer on
its own behalf, making the manager liable for sale.

In the case of Adams v. State, 145 S.W. 940, the Court
of Criminal Appeals of this State held:

Where a club purchased liquors in bulk with money
in the treasury a distribution of the same to members
at the usual price constituted a sale within the prohi-
bition laws.

In State v. Country Club, 173 S.W. 570, the Court of
Criminal Appeals of this State held:

The dispensing of intoxicating liquors by an
incorporated, bona fide social club to its members,
for a sum sufficient to pay the cost of the liquors
and of maintaining the service, is a sale of such
liquors.

In the case of Williams v. State, 103 S.W. (2d) 380, the facts were as follows:

>    The defendant was found in the possession of ten cases of beer, in the city of Abilene, in Taylor County, Texas. At the time defendant was the manager of what was known as the "Abilene Athletic Club," which had approximately 250 members. A prerequisite to membership being that a written application had to be made which called for a deposit of $5.00 by the applicant with said manager. Upon being approved as a member of the club, the applicant paid a monthly sum of $1.00 dues, the primary purpose of the $5.00 mentioned being that it was to be used in the purchase of merchandise; and also if the member withdrew he was entitled to the return of his $5 deposit, provided it had not been consumed in the individual purchase of merchandise or in the payment of dues. When the $5 deposit had been consumed, it was also understood that the members should deposit a like sum; also the general properties and activities of the club are set out; it is shown that appellant is permitted to sell chewing gum, cigars, cigarettes, sandwiches, coffee, milk, and soft drinks and put the profits of such business into the payment of part os his salary as manager. It is further set out in the agreed statement of the facts in this case that some of the members of said Athletic Club had directed appellant to have on hand in said club beer for their consumption and that the beer upon which this prosecution was based had been ordered by various members and that the defendant had gone to Sweetwater, and acting as manager  of said club and agent for the members of said club had purchased with the money of said members said beer to bring back for the members of the club. Each member was to pay the manager 15 cents per container for said beer when he received his beer at said club, and said 15 cents deposit, if any, was deposited in "the members deposit account" to replenish same and to be used in accordance with the direction of the members of the club. Appellant got no profit from the sale of any beer but from the revenues, dues, and profits from the sale of merchandise were to be paid all expenses in the operation of said club, the rent of the building and salaries of attendants. The Court of Criminal Appeals held in this case under the facts, that the defendant possessed intoxicating liquors for the purpose of sale in a dry area.

It is true that the violation in the Williams case, as well as those in the other cases herein referred to, occurred in dry territory, however, in view of the definition of an open saloon, in our opinion, the

facts herein set forth with reference to the manner of operation of the Houston Country Club of Houston, Texas, clearly show that the acts of the members of such club, in the operating of same, constitute a violation of the Texas Liquor Control Act, in that the operation of same comes within the definition of an open saloon, which is prohibited by statute in the State of Texas.

It would seem, that in so far as the selling of alcoholic beverages, manufactured in whole or in part, by means of the process of distillation, or any liquor composed or compounded, in part of distilled spirits, or the offering for sale of the same, by the Houston County Club, is concerned, the members of said club are attempting to do indirectly, what they cannot legally do directly.

In your letter you also request an opinion as to whether the River Oaks Country Club of Houston, Texas, under the facts submitted, is operated as an open saloon. We see no difference in the method of operation of these two clubs, as far as the handling of their liquor is concerned, except that the latter purchases its liquor through a trustee. This probably makes the trustee guilty of operating an open saloon, and releases the club members of such liability.

We do not think that there is any doubt but that the fact that liquor is dispensed to members of these clubs by the drink, coupled with the further fact that such members are called upon to contribute money to the Revolving Fund, and that they do so contribute, so that liquor may be kept on hand, constitutes sales of liquor by the drink on the part of those who deliver the liquor to the various members, whoever they may be, and that both clubs in question are being operated as open saloons.

We trust that this satisfactorily answers your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
/s/ Fred C. Chandler

Fred C. Chandler
Assistant

FCC:ob:egw

APPROVED AUG. 26, 1939
/s/ GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By BWB
Chairman