HENRY KRNAVEK v. THE STATE.

No. 1025. Decided June 16, 1897.

1. **Local Option—Sale, What Is—Charge.**

On a trial for a violation of local option, a charge of the court that "a sale is the passing of the title and possession of any property for money, which the buyer pays or promises to pay," is sufficient.

2. **Same—Social Club—Sale by Managing Steward to Member.**

A sale of intoxicating liquors, bought with the money of, and belonging to, an incorporated social club, by the managing steward or barkeeper of the club to any member of the club, is a sale and transfer of the property from the corporation to the individual member.

3. **Same.**

On a trial for violation of local option, where the defense was, that the sale was to a member of a social club, of liquors belonging to the club, by the managing steward of the club, Held, in local option precincts, all sales of intoxicants whatsoever are prohibited by law, except on the prescription of a physician or for sacramental purposes; and these statutory exceptions exclude any and all other kinds and character of sales. See the cases of Koenig v. State, 33 Texas Crim. Rep., 367; Winters v. State, 33 Texas Crim. Rep., 395; Grant v. State, 33 Texas Crim. Rep., 527; and State v. Austin Club, 33 S. W. Rep., 113—distinguished.

4. **Same—Social Club—Evasion of the Law.**

See facts stated in the opinion with regard to the organization, incorporation, management, and conduct of a social club, upon which it is Held, that it can hardly be questioned but that the social club or corporation was formed for the purpose of evading the local option law.

APPEAL from the County Court of Williamson. Tried below before Hon. D. S. CHESSER, County Judge.

Appeal from a conviction for a violation of local option; penalty, a fine of $100 and twenty days imprisonment in the county jail.

The opinion states the case.

[No briefs for either party have come to the hands of the Reporter.]

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted for selling intoxicating liquor in a local option precinct, and his punishment assessed at a fine of $100 and twenty days imprisonment in the county jail; hence this appeal.

The evidence discloses that at the town of Bartlett, in a local option precinct, there was formed a private corporation, known and styled as the "Bartlett Harmony Club," which was incorporated under the laws of this State for literary purposes, to promote social intercourse among its members, to provide the conveniences of a clubroom, and was to continue for a period of fifty years. It had a board of directors, consisting of five members, elected from the membership, who were to manage the affairs of the club. Said club was to have no capital stock and no assets. It had by-laws, among which were the following: "(1) The steward's duty is to wait upon the members of the club, to furnish them with drinks, whisky, beer, etc., and other refreshments, and to take pay therefor from the members. (2) The proceeds of all sales are to be paid by him into the treasury of the club, to be reinvested by the club in such like drinks, to replace those sold, for the benefit of its members. (3) The steward or barkeeper is prohibited from letting anyone but a member or invited guest from having anything to drink or eat." The defendant was the steward or barkeeper. The club was not formed until after prohibition was put in force. The house in which the clubroom is located was the defendant's barroom, which he kept as a saloon prior to the time when local option went into effect. It had the usual appurtenances of a barroom and saloon, and the same bar that belonged to defendant's saloon. In the front part of the room a brother of the defendant kept a lunch counter, and sold lemonade and soda water. The clubroom and the lunch counter were in the same room, but divided one from the other by a partition. The defendant sometimes waited on his brother's customers, and sometimes the brother waited on the club members, in the absence of the defendant. The purchaser in this case was one of the board of directors of the corporation at the time of the purchase, and was the secretary of the board. This clubroom had a bar, where the whisky and other intoxicants were kept for use of the club members. The club also had a reading room, and in the rear of the club a gymnasium. It also had a billiard table and domino table for the use of its members. One of the witnesses testified that the directors issued instruc-

tions to the defendant as steward to let no one but members of the club and nonresident visitors buy drinks, and no one but an invited guest or members were allowed in the clubroom. The members could only be elected by the board of directors, any three of whom could defeat such election. Each member paid as an initiation fee the sum of $1, and monthly dues of 5 cents. When the club was first organized the initiation fee was $1, and the monthly dues 25 cents, but later on said monthly dues were reduced to 5 cents. The purpose of this club was stated to be social and literary. All the papers, books, whisky, beer, soda water, cigars, etc., were purchased and paid for out of the money of the club. The witnesses state that defendant had no interest in the whisky, beer, etc., except as any other member. He was paid a salary to serve as steward and barkeeper for said club, and received no profits on the sales. The club issued no stock, and the intoxicants were paid for out of the club funds. No fee was charged for the use of the billiard table, but no one except members could use it. The club is not open, but kept closed as to the public. It pays no State tax, but pays a United States revenue license. A book was kept for registering the names of the members of the club when they joined. The literary features of the club were insignificant. One newspaper was taken, which came twice a week, and about a dozen books were in the library. The club began with about twenty-five members, and has increased to 125 or 130. The board of directors are the business managers, and the defendant does the ordering, under their direction. The beer and whisky are bought at wholesale prices and retailed to the members at 5 cents per glass for beer and 15 cents per drink for whisky. The club gets the benefit of the difference. There is no particular expense fund. The expenses are paid from the profits derived from the sale of the beer and whisky, etc., and from the initiation fees paid by the members. No member is entitled simply to his proportional part of the beer and whisky, but can buy as much as he is willing to pay for. It is intended that the club shall pay expenses, but, if it does not, assessments will be made. Another witness, also a member of the board of directors, testified substantially as the former witness, and further said: "That the sale of whisky and beer was not the main purpose of the club; it was for the pleasure of the members. The club was organized for pleasure. No profit was derived from it to any of the members at all. There is no pecuniary benefit to any member at all, and the board of directors instructed the steward or barkeeper not to let anyone have beer or whisky except a member." This is the substance of the testimony.

The court instructed the jury in regard to the sale of whisky by defendant, and defining a sale, as follows: "A sale is the passing of the title and possession of any property for money, which the buyer pays or promises to pay." Defendant excepted to the charge, and requested the following instructions: "If you believe from the evidence that the Bartlett Harmony Club is an incorporated institution under the laws of Texas, and duly chartered for literary purposes, to promote social inter-

course among its members, and to provide them with conveniences of a clubroom, and that on or about the 14th day of January, 1895, was such, and at such time the defendant and George T. Alten were members thereof, and that such club was formed, chartered, and organized in good faith for the purposes mentioned in its charter of the 17th of October, 1894, and not for the purposes of evading the laws of this State prohibiting the sale of intoxicating liquors, then you are charged that such club would have the right to buy and distribute among its members beer and other intoxicating liquors out of the money of the members of such club, contributed for such purposes, and under such circumstances such beer or intoxicating liquors would become the common property of the members of such club, and the members of such club could legally employ one of its members for the purpose of distributing the same among the members of the club; and, if beer was furnished to any member thereof under the rules of this club, only such member depositing with the steward or member in charge of such beer or other intoxicating liquor a certain sum of money in exchange for such beer or intoxicating liquor, which money was to go into and become a part of the common fund of such club, for the purpose of keeping up the expenses thereof, and to take the place of the beer so exchanged, then, in such an event, you are charged that such a transaction would not be a sale; and if you believe from the evidence that such beer was the exclusive property of the club, and that the defendant and George T. Alten were members thereof, and that the defendant was selected by such club as its steward to thus distribute its beer or intoxicating liquor among its members, upon such member paying in money therefor, and that he did thus distribute to George T. Alten such beer or intoxicating liquor, for which the said George T. Alten paid, and that such money was to be, and was, deposited into the treasury and common fund of this club, then you will find the defendant not guilty." Appellant further asked the court to charge the jury: "If you believe from the evidence that the beer charged to have been sold by this defendant to one George T. Alten was the property of and belonged to a club or organization, and was kept by such club or organizataion for the exclusive use of the members of such club or organization, and no others, and that defendant and said George T. Alten were, at the time of the alleged sale of said beer, members of such organization, and owned an equal share or interest in said beer with the other members, then the sale of said beer by defendant to said George T. Alten, as alleged in this indictment, would not be a violation of the local option law, and you should acquit the defendant." These charges were refused by the court, and exceptions were reserved by the appellant.

The court's definition of a sale, so far as this case is concerned, is sufficient. The special charges requested by defendant were based upon the theory that the sale of the intoxicants by the defendant to members of the club did not constitute a violation of the local option law, under the facts of this case; and in support of this contention he cites us to the following cases: Koenig v. State, 33 Texas Crim. Rep., 367; Winters v.

State, 33 Texas Crim. Rep., 395; Grant v. State, 33 Texas Crim. Rep., 527; State v. Austin Club (Texas Sup.), 33 S. W. Rep., 113. In Koenig's case, this court held that where a party was charged with playing cards at a public place, to wit, a house where spirituous liquors were retailed, and the evidence showed that it was a private chartered corporation, sellling intoxicants to only its members, the money paid for the same being turned into and used as a general fund to replenish the stock of liquors of said corporation when needed, such a house was not one for retailing spirituous liquors, and a public house, under the statute inhibiting the playing of cards at such place. In support of the same contention, the other cases cited by appellant decided by this court are in point. In the case of State v. Austin Club, supra, the question there decided was that a club thus created was not subject to the license imposed by the act of the Legislature on the occupation of retailing spirituous liquors.

The authorities referred to are not in point as to this case. The question in the Austin Club case was whether or not the business was taxable as an occupation, and the question in the cases decided by this court was whether or not the parties indicted were playing cards at a place for retailing spirituous liquors, the same being a public place, under the statute. In both cases it was a question whether or not the parties were engaged in the business or pursued the occupation. In neither case were intoxicants sold as a business or occupation, or to the public; they were sold simply to the members of the club, and the public was excluded. License fees are imposed by the State only on the sale of intoxicants when pursued as an occupation. That question is not involved in this case. The question here is whether the sale of intoxicants by the managing steward or barkeeper of the club to one of the members of said club is a sale. We are of opinion that it is. When the intoxicants were bought by the steward, or any other member of the club, with the funds of the club, they became the property of the corporation, and a sale by the steward of said corporation to any of its members was a sale, as that term is defined. It was the separation of the property of the club, and the transfer of the same to an individual member, for which he either paid the cash, or became responsible therefor. As testified in this case, this transaction between defendant and the alleged purchaser was brought fairly and clearly within the definition of "sale," as that term is defined in all the law books. This is not a case where parties contribute sums of money and purchase intoxicants therewith, and divide them pro rata among themselves; but it is a transaction where the common assets of a continuing business are used to replenish the goods sold in that business. The distinction drawn between this case and the cases above cited is recognized in the Koenig case, supra. It was there said: "The members did not own the liquors, although they claimed to own them. The money received went to the pretended treasurer, who rendered no account to the members. Anyone could become a member by paying a dollar." The court correctly held that the jury were warranted

in finding it a mere device to evade the law. The case does not conflict with those above. In said case this court refers to Marmont v. State, 48 Ind., 21, and said: "It was there distinctly held that the delivery by the club, through its agent, of beer, which was the common property of the society, to a member of the society, upon credit or for cash, and which thereby became the separate property of the member, was a sale, within the meaning of the statutes of that State." And it was so held in Alabama and North Carolina. See Black on Intox. Liq., sec. 142; People v. Andrews, 115 N. Y., 427; 22 N. E. Rep., 358; People v. Sinell (Sup.), 12 N. Y. Supp., 40; People v. Bradley (Sup.), 11 N. Y. Supp., 594; State v. Essex Club (N. J. Sup.), 20 Atl. Rep., 769; Martin v. State, 59 Ala., 34; People v. Soule, 74 Mich., 250; 41 N. W. Rep., 908; Kentucky Club v. City of Louisville (Ky.), 17 S. W. Rep., 743.

In regard to the question of pursuing this character of business in a local option precinct, the license laws are inoperative, and the State is prohibited from collecting the tax imposed on the occupation of retailing spirituous liquors. Not only so, but where the local option law is put in operation, and parties are carrying on that character of business, the license is revoked at once, and provision is made for restoring the pro rata measure of the amount paid the State for the privilege of carrying on that business. This emphasizes the statement that the Koenig case, supra, and those that follow it, can not apply to a case similar to this case.

There is another view to be taken of this case. In local option precincts the sale of intoxicants is prohibited, except on prescription of a physician or for sacramental purposes. These are the only exceptions in the local option precincts providing for the sale of such intoxicants. This would exclude any and all other kinds or character of sales.

It is contended that the evidence in this case does not support this conviction. If the above views of the law be correct, then there is no question at all as to the sufficiency of the evidence. It is an admitted fact that appellant sold the intoxicants as charged in the indictment. His defense is based upon the testimony showing that he was the agent of the club, and sold intoxicants of the club, retailing it to its members, and receiving pay therefor. That this corporation was formed for the purpose of evading the effect of the local option law can hardly be questioned. A review of the testimony, as stated herein, renders certain that conclusion. The judgment is affirmed.

*Affirmed.*