## KARL FEIGE v. THE STATE.

### No. 3475. Decided March 21, 1906.

**Local Option—Incorporated Association—Sale—Subterfuge—Principal.**

Where upon a trial for violating the local option law, the evidence showed that the money paid in by the club members of an incorporated association, was paid into the corporation fund and became the property of the same, with which it furnished beer to the members of the club through its manager, the defendant; and that the money was not sent out of the local option territory to purchase beer for individual members or groups of members, but that the beer was purchased by the corporation and sold at five cents a glass by the manager to individual members. Held, that the defendant became the vendor of the beer and the principal in the transaction; and that the whole plan pursued was a mere subterfuge to cover a sale made in local option territory; and this although defendant was not shown to have been personally present at the time of the sale, but was assenting to this method of disposing of intoxicating liquor.

Appeal from the County Court of Johnson. Tried below before the Hon. J. D. Goldsmith.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*Walker & Baker* and *W. B. Featherstone,* for appellant.—On˜ the question that it was not unlawful for a number of persons or an association of persons to order intoxicating liquors from a place where such beverages could be legally sold, and then meet together and drink the same in local option territory, etc.: Way v. State, 35 S. W. Rep., 377; Bennett v. State, 34 id., 936; Bowman v. State, 35 id., 382; Newbury v. State, 44 id., 843; Blasingame v. State, 85 id., 278; Kirby v. State, 80 id., 1007; Krnavek v. State, 41 id., 612.

*Howard Martin,* Assistant Attorney-General, and *Mason Cleveland,* for the State.

HENDERSON, JUDGE.—Appellant was convicted of violating the local option law, and his punishment assessed at a fine of $25 and twenty days confinement in the county jail; hence this appeal.

Local option was shown to exist in Johnson County. The facts show that in July, 1901, Henry Feige, Oscar Mueller, E. H. Strack and Karl Feige, of Cleburne, Johnson County, incorporated themselves, as follows:

"The State of Texas, } County of Johnson. }

Sec. 1. Be it known to all men, that we, Karl Feige, Engelbert Geiger, E. H. Strack, Chas. Schlieper, Oscar Mueller, Henry Feige, citizens of the State of Texas, voluntarily associate ourselves into a private corporation, under the name and style of

Germania Association.

Sec. 2. This private corporation, composed of the individuals aforesaid, and their associates, under the name and style aforesaid, is formed for the purpose of promoting social association of its members.

Sec. 3. The principal office of this corporation, where its business is to be transacted, shall be established and located at Cleburne, Johnson County, State of Texas.

Sec. 4. The charter of this corporation shall remain in force for a term of fifty years.

Sec. 5. The business of this corporation shall be conducted by a board of directors, to be elected annually by the members of said association, and those appointed for the first year as directors, shall be composed of the following persons: Henry Feige, Oscar Mueller, E. H. Strack and Karl Feige, all of them residing at the city of Cleburne, Johnson County, State of Texas.

Sec. 6. This association has no assets, and no capital stock."

It was further shown that this association was in existence in 1905, the alleged date of the sale of the intoxicating liquor for which appellant was tried, though no election of officers and no change in the personnel of the incorporators in the mean time is shown, except that Henry Feige had died. According to the rules of the association, a person could become a member of said Germania Association, by paying one dollar, which appears to have been paid in this instance to Karl Feige, who was at the time secretary and vice president. It is not shown how the members participated in the association or what particular rights they had in the election of officers and in the management of the company. It is not shown that the institution made or lost money, nor is there any showing of dividends or distribution of profits by the concern. According to the evidence, the State's witness John Donnell, to whom the alleged sale was made, testified: "I joined by sending in my name before the board of directors, and they passed on it, and admitted me to membership. I do not know now who the president is; but Karl Feige is secretary and vice president. I do not know whether he is a director or not. I have been told that Feige is the treasurer, but I do not know this. Frank Adkins was the steward, and his duties were to take care of the house. If he had any other duties I don't know it. The duties of the secretary and treasurer were to keep the minutes and look after the business. I do not know anything about any money of the association. The purpose of the club was to have a place where we could enjoy ourselves. We did not have to talk or drink to become a member, and I presume a deaf and dumb man could be a member. We drank beer there nearly every night. I wasn't there every night, but drank nearly every time I was there. We got the beer in this way: we put the money in a box and took out tickets—a ticket for each nickel deposited; and these tickets were for the next night. I usually put in 25 cents and took out five tickets; we could not get any beer on the

same night we got the tickets, but had to wait until the next night. The next night we would put a ticket in a box on the beer keg, and draw our own beer. I always kept my tickets until the next night, and then used them. I was instructed by defendant how I must do in order to get beer. He told me when I wanted beer to go down the night before and put my money in the box, and take out a ticket for each nickel, and that the beer would come down from Ft. Worth, for the next night, and then that night I went down and got my beer. I drank it all that night, and I did not keep any tickets over for any other night. The tickets were green, and had on them, 'Germania Association, Cleburne, Texas. Incorporated, 1901.' There were no dates on the tickets, and the same kind of tickets are used all the time. I never bought any intoxicating liquor from the defendant on the 2nd day of September, 1905, or at any other time." That he got some beer on this date and at various dates, by proceeding according to the instructions as above stated. It is further stated that he paid a dollar as membership fee to join the association. This money was paid to defendant when he handed to prosecutor his membership card; that the money they put in the evening before was sent down to Fort Worth for beer the next day, and came back on the evening train; and they met that night and drank it. He further testified that he never drank beer the night he bought the tickets, but waited until the next night to drink on those tickets. However, the State proved by other witnesses that they drank beer on tickets purchased on the same night. It was further shown that appellant was usually at the club room the nights when the members gathered; but it was shown that on the particular night when this beer, which was shown to be intoxicating, was delivered, to wit: September 2, 1905, the date of the alleged sale to prosecutor, appellant was absent. It was further shown by one witness that the cost of a keg of beer was some time before this transaction $2.50 or $3, and that the same contained 64 glasses of the usual size, and at 5 cents per glass would be worth $3.20; that there would be a profit of about 70 cents, though this witness stated after the express charges were paid from Fort Worth to Cleburne and drayage, there would not be much profit left, if any. It was also shown that on one occasion, appellant made a speech to the members of the club, informing them of their duties, and telling them that there was a right way and a wrong way to run a club of that sort. And if they would obey the rules they would not violate the law. This is a sufficient statement of the case to present the questions for determination.

The court instructed the jury in effect that if the jury believed that appellant delivered the beer after the manner prescribed by the rules of the association, it was a sale at Cleburne. On the other hand, appellant asked the court to instruct the jury that the delivery of beer to the prosecutor, as shown by the testimony, was not a sale in Johnson County. We think that these two charges; the one given

and the other refused, present sharply before this court, the issue to be determined.

In Krnavek v. State, 38 Texas Crim. Rep., 44, the articles of incorporation were nearly similar to those here introduced in evidence. There the initiation fee was a dollar. For a while the monthly dues were 25 cents. Beer was sold at 5 cents a glass to the members only, and whisky at 15 cents per glass. Krnavek was paid a salary to serve as steward and barkeeper for the club, and received no profits on the sales. The club issued no stock, and the intoxicants were paid for out of the club. In this case the club is not shown to have dealt in any other kind of liquor than beer. It is further shown that according to the rules, each glass of beer was paid for at the rate of 5 cents per glass; and that no member could get beer on the night he bought tickets, but the club assumed to send to Fort Worth for beer on the next day, and he could get beer on his tickets the following night. However, in Krnavek's case he was not required to get tickets in advance, and could get any quantity of beer at 5 cents a glass. As we understand it, these latter provisions marked the differential between the methods pursued in Krnavek's case, and the method pursued by the club in this case. That is, the club here proposed to take the money paid by a club member, together with money paid by other club members, and send for beer on the next day, and distribute it out among such members so sending on the following night. Presumably by this means it was intended to legalize the method pursued, and thus to constitute the sale to the member of the club at Fort Worth, and not at Cleburne. Here, however, as in Krnavek's case, the money paid in by the club members was paid into the corporation and became the property of the corporation with which it furnished beer to the members of the club. It is not shown that appellant as manager, preserved the particular money of members paying in, and sent for beer in groups of members. How many tickets he received on any particular night is not shown. If only one member joined and bought only five tickets, he would not have enough money the next day to send for a keg of beer. So that in such case, he or the club would have to advance the money for the fresh beer to be brought from Fort Worth. In any event, according to our view, the club members when they paid their money into the treasury, parted with it to the corporation: the corporation becoming the owner thereof, and when the corporation sent out this money it bought the beer on its own behalf in Fort Worth, and if at any time the corporation had failed and become subject to execution, the beer and property of the same could have been seized for the debts of such corporation. When the beer was brought from Fort Worth to Cleburne, being the property of the corporation, whenever it delivered a glass of beer to any member and received therefor 5 cents, it became the vendor of such glass of beer: the title to the same was parted with by the company through its manager to the vendee, and the manager of said company made a

sale to such member. This idea is reinforced when we look at the actual method pursued by this concern in the distribution of its beer. Appellant was the manager; he received no salary, but devoted his time to the management of said concern. Evidently to keep it a going concern during the four years it must have derived some profits, and yet no distribution among the club members was ever shown of these profits. However, we do not believe that would alter the case. Evidently the manager who received the funds of the club must have pocketed the profits, or if no profits, he must have pocketed the losses, and run the club for the sheer fun and pleasure of it. At any rate he seems to have taken his chances to make a profit out of the concern. The further fàct that no showing is made by appellant (and the proof was peculiarly within his knowledge if it existed) that the particular funds paid into the club by the prosecutor went with that of others to buy the particular keg of beer out of which he drank his five glasses on the ensuing night, would indicate that this was a mere evasion and not a real bona fide purchase for the prosecutor by appellant as his agent of a certain amount of beer for him in Fort Worth. It occurs to us, that the whole plan pursued was a mere device and subterfuge, designed to cover a sale really made in Cleburne. Under our view this case coming clearly within the principle announced in Krnavek's case, supra, and was a sale by appellant, to the prosecutor, of beer in Cleburne; and it makes no difference that he was not there on the particular night. He was assenting to this method of disposing of intoxicating liquor. The business was conducted under his management, and under the rules of law, though technically he might be an accomplice, he was a principal in the transaction—this being a misdemeanor. In our view, the court did not err in giving the instruction it did on behalf of the State, and in refusing a contrary special instruction requested by appellant, and in refusing all of his special requested instructions.

Nor does proof of the other sale made to Smith, even if it be conceded that it was not properly introduced in evidence, make any difference, as the punishment assessed here was the minimum, and there is no question as to his guilt.

The judgment is accordingly affirmed.

*Affirmed.*