892

**BACKUES et al. v. WOODS.**

No. 2711.

Court of Civil Appeals of Texas. Eastland.

March 4, 1949.

Rehearing Denied March 25, 1949.

Price Daniel, Atty. Gen. of Texas (William S. Lott, Artie Stephens, and Ned McDaniel, Asst. Attys. Gen.), for appellant.

Scarborough, Yates, Scarborough & Black, of Abilene, for appellee.

COLLINGS, Justice.

This is a suit brought by James F. Woods, individually and for the use and benefit of the members of the Hamlin V.F.W. Post No. 6014, Hamlin, Texas, against the Texas Liquor Control Board and three of its agents, seeking a mandatory injunction to require the return of approximately 9,483 bottles of beer seized by appellants. The appellants, by cross action, sought a declaration of forfeiture of the beer to the State of Texas. Upon a trial before a jury which found that neither Woods nor the Veterans of Foreign Wars of Hamlin, Texas, possessed the beer in question for the purpose of sale, the trial court rendered judgment ordering the return of the beer and denying its forfeiture. It is from such judgment that this appeal is brought.

Appellants contend that as a matter of law, from the undisputed evidence, the beer is contraband and subject to seizure and forfeiture under the Texas Liquor Control Act, because it was transported to Fisher County by Woods and another, at the instance of the members and officers of the V.F.W. Post in violation of the Texas Liquor Control Act, Vernon's Ann.P.C. art. 666—1 et seq., and was at the time of seizure and theretofore, stored, distributed, warehoused and possessed for the purpose of sale by Woods and the members of the Post in violation of the Liquor Control Act.

The evidence relied upon by appellees in support of the judgment and by appellants in support of their contention, is as follows:

Appellee Woods testified in substance that, as a charter member, he was employed by the V.F.W. Post as the sole custodian of the clubhouse, located about a mile and a half or two miles west of Ham-

lin; that as custodian and manager, he took care of everything; saw that only members came in, took care of their beer, kept it iced, and served it to them; that he had a room at the club where he stayed and took care of the property * * *; that he did not own the beer himself, except one case; that he kept records of the beer. Appellee testified that each member signed an agreement before he put up money for beer, reciting as follows:

"To: Post Quartermaster and/or Any Person of His Selection

"Veterans Of Foreign Wars, Post No. 6014, "Hamlin, Texas, March 18, 1948.

"We, the undersigned members of Post No. 6014, Veterans of Foreign Wars, Hamlin, Texas, and we hereby certify that we are qualified members of said Post No. 6014, Veterans of Foreign Wars, Hamlin, Texas.

"We hereby (on the date above written) deposit with you our Post Quartermaster, the sum of Five ($5.00) Dollars, for the purchase of a case of beer, and hereby designate said Post Quartermaster and/or any person of his selection, in the same capacity, to purchase said case of beer for us (individually) wherever same might be legally procured, and to transport said case of beer for us (individually) and in our stead, from the point of origin where same was purchased, to us (individually) at the Veterans of Foreign Wars Club House of Post No. 6014, Hamlin, Texas, and to be used solely for our own individual personal consumption and being one individual case for each member whose name appears below.

"We also authorize and instruct said Quartermaster to use said Five ($5.00) for the actual purchase price of said beer, also for each of our pro rata share of the actual cost of transporting said beer, which transportation is to be accomplished by said Quartermaster and/or any person of his selection, and the person transporting said beer is to receive only the actual transportation cost incurred by virtue of such transportation, and he is to receive no profit or wages, or any other monetary remuneration for such transportation. And said sum of money so deposited should have de-

ducted therefrom each of our pro rata share of the actual cost of the ice necessary to cool our individual case of beer. If there should be any portion of said deposit remaining, after the foregoing cost and expenses are deducted therefrom, said Quartermaster is authorized by each of us (individually) to deliver said remaining portion, if any, to a worthy charitable organization, as an individual donation from each of the undersigned.

It is hereby specifically understood and hereby stated by each of us (individually) and we hereby instruct said Quartermaster that neither he, the said Quartermaster and/or any person of his selection, nor the Veterans of Foreign Wars, Post No. 6014, shall receive any profit or monetary benefit whatsoever, directly or indirectly, from this transaction or any future transaction of like character, and that any operational costs of the Veterans of Foreign Wars shall be paid from other funds belonging to said organization.

"These are the wishes and instructions of the undersigned members who hereby sign in an individual capacity the day and year above written."

Appellee Woods testified that he had brought the beer from Breckenridge; that he purchased it there at the Falstaff warehouse; that he, with another member, made two trips, transporting the beer in a truck on a public highway to Fisher County; that at the time of transportation he did not intend to drink the beer himself, except one case, which belonged to him; that he did not own the rest; that the member who owned the truck was reimbursed actual expenses for the trip by the Quartermaster; that he paid various prices for the beer, ranging from $2.20 to $3.65; that no case, bottle or kind of beer was identified as belonging to any particular member; that the officers seized 391 cases and there were 180 to 185 members.

Appellee testified that the beer was drunk by the members; that they put up $5 and received a card with 24 numbers, one of which was punched for each bottle of beer received by the member; that after a card was used up, the member could receive no more beer unless he had ordered another

case and had a card for it; that the beer was not sold to the members; that no one but members were permitted at the club; that he kept the tickets available at the club house and issued them; that no beer was served to a member until after he had ordered it, received a ticket and the beer had been actually received at the club, but that a member might obtain more than one ticket; that records were kept on expenses and what he took in, which he delivered to the Quartermaster; that the beer was purchased by check drawn on the Post from money taken up for beer and deposited in the name of the Post in a special account and drawn on by checks signed by the Quartermaster; that the beer was stored in the cellar which opened into the building; and in another store room in the building; that the building was 32 x 32, with the bar room 16 x 16; that the bar room had a bar and beer boxes where the beer was iced; and that occasionally he employed helpers at the club; that he was paid as custodian of the club and the members' beer; that appellants, by authority of a search warrant, seized the beer May 12, 1948, at the club house without his consent.

It was further testified by the commanding officer of the Post that the Post had voted to donate any profits on beer to charity and had so donated $1,479.

He further testified that all receipts at the club, including proceeds from the music machine and the sale of potato chips, Fritos, candy, cigarettes, coca cola, and such things, go into a common fund called the club fund which is the same as the beer fund; that receipts of money put up for beer go into the club fund; and when the wholesaler is paid for the beer, it comes out of the club fund; that Mr. Woods' salary and all normal routine expenditures come out of such fund.

It was stipulated that the beer is an alcoholic beverage.

Appellees plead that Fisher County is a dry county and are bound by such pleading in the absence of testimony to the contrary. Raymer v. Houghton, Tex.Civ. App., 39 S.W.2d 941; Heid Bros. v. Riesto, Tex.Civ.App., 281 S.W. 638.

Arts. 666—1 et seq. and 667—1 et seq. of Vernon's Annotated Penal Code of the State of Texas, with their various subdivisions, are known as the Texas Liquor Control Act.

Art 666—2 provides that the entire Act shall be deemed an exercise of the police power and that all of the provisions thereof shall be liberally construed for the accomplishment of that purpose.

Art. 666—4 provides:

"It shall not be unlawful to * * * sell * * * distribute, warehouse, store, * * * possess for the purpose of sale * * * any liquor in this State, * * * provided that the rights or privileges so to do are granted by any provision of this Act. It is further expressly provided that any rights or privileges granted by the provisions of this Section, as exceptions to the prohibited acts in other sections shall be enjoyed and exercised only in the manner as provided. Any act done by any person which is not granted in this Act is hereby declared to be unlawful."

Art. 666—4(b) provides:

"It shall be unlawful for any person in any dry area to * * * sell, possess for the purpose of sale, * * * transport, distribute, warehouse, store, solicit or take orders for * * * any * * * beer * * *"

Art. 666—3a provides:

" 'Person' shall mean and refer to any natural person or association of natural persons, trustee, receiver, * * * organization, or the manager, agent, servant, or employee of any of them."

The testimony of appellee Woods and of the commanding officer of the Post are conclusive that the beer in question was possessed for the purpose of sale in violation of the Act.

Art. 666—23a (1) of the Act provides for the handling of beer by a person for his own consumption, but not otherwise. In a dry area the possession by one person of more than 24 bottles of beer is prima facie evidence of possession for sale. Appellee Woods admitted possession of 9,483 bottles of which only 24 were for his own use.

The beer was bought by Woods as an employee of the Post as a bulk purchase, with no case or bottle being segregated or designated as that of any individual member; it was paid for out of the club fund. The beer so purchased belonged to the Post. It is true that the amount of money required for the purchase, and even more, had been deposited with the Post Quartermaster and that the member making a deposit of $5 received a card which entitled him to receive 24 bottles of beer, as a person who purchases a meal ticket is entitled to a specified number of dinners. When the member asked for a bottle of beer and presented his card to be punched, he was entitled to and did receive the beer. This constituted a sale to the member at the time he presented his card and secured the beer. The possession of such beer by appellee under the circumstances, is possession for the purpose of sale. Williams v. State, 132 Tex.Cr.R. 188., 103 S.W.2d 380; Adkins v. State, 49 Tex.Cr.R. 524, 95 S.W. 506; Feige v. State, 49 Tex.Cr.R. 513, 95 S.W. 506; Krnavek v. State, 38 Tex.Cr.R. 44, 41 S.W. 612.

According to the testimony of appellee Woods, who was custodian and manager of the Post Club House, the beer was stored in the cellar and in another store room in the building. In the bar room there was a bar and beer boxes where beer was iced for the use of members when needed. "Store" has been defined as laying away for future use or for preservation. State v. Burns, 133 S.C. 238, 130 S.E. 641; Renshaw v. Missouri State Mutual Fire & Marine Ins. Co., 103 Mo. 595, 15 S.W. 945, 23 Am.St. Rep. 904. Such storing of beer in a cellar or other store room by a club or its manager for the future use of its members violates the terms of Art. 666—4(b), supra, which makes the storing of beer in a dry area unlawful. State v. Crystal Club, Tex.Civ. App., 177 S.W.2d 110; French v. State, 99 Tex.Cr.R. 429, 269 S.W. 786.

There are exceptions to this prohibition, as where an individual possesses beer for his own personal consumption and not for the purpose of sale. Art. 666—23a. There is no exception however, which makes it permissible in a dry area, for a club to store beer under any circumstances or for an individual to store it for another. Any other construction would defeat the clear intent of the law.

Art. 666—3a of the Act provides:

" 'Illicit beverage' shall mean and refer to any alcoholic beverage * * * distributed, * * * sold, * * * warehoused, stored, possessed, * * * or transported in violation of this Act, * * * and any alcoholic beverage possessed, kept, stored, owned, * * * with intent to * * * sell, distribute, * * * warehouse, store, or transport in violation of the provisions of this Act."

Art. 666—29(a) provides:

"Any room, building, * * * structure, or place of any kind where alcoholic beverages are sold, bartered, * * * stored, possessed * * * in violation of this Act, or under conditions and circumstances contrary to the purposes of this Act, and all such beverages * * * kept and used in any such place, hereby are declared to be a common nuisance; and any person who maintains or assists in maintaining such common nuisance shall be guilty of a violation of this Act."

Art. 666—42(a) provides:

"All alcoholic beverages declared by this Act to be a nuisance, and all illicit beverages as defined by this Act, may be seized with or without a warrant by an agent or employee of the Texas Liquor Control Board, or by any peace officer, * * * to be held for final action of the court as hereafter provided."

Art 666—42(b) recognizes the institution of suit for forfeiture of alcoholic beverages seized, the case to be tried as other civil cases and that:

"If upon the trial of such suit it is found that alcoholic beverages or property are a nuisance, or were used or kept in maintaining a nuisance, under the terms of this Act, or that the alcoholic beverage is illicit, as defined by this Act, then the court trying said cause shall render judgment forfeiting the same to the State of Texas and ordering the same disposed of as provided for by Section 30 of this Article."

A careful consideration of the plan of operation of appellees indicates that everything is accomplished by such operation in procuring and disbursing beer for which permits would be required in a wet area. Certainly such a plan is contrary to the purpose of the Act as applied to a dry area. State v. Parker, Tex.Sup., 212 S.W. 2d 132; Art. 666—29(a) supra. The beer was posssessed by appellees with intent to sell and was stored in violation of the Liquor Control Act. For these reasons, the beer was "illicit beverage" as that term is defined by the Act and was subject to seizure and forfeiture by the State of Texas under the provisions of Art. 666—42.

It follows that the trial court erred in rendering judgment for appellees and in refusing to declare a forfeiture of the beer as required by the Texas Liquor Control Act. For the reasons stated, the judgment of the trial court in favor of appellees is reversed and judgment here rendered declaring a forfeiture to the State of Texas of the 9,483 bottles of beer.

The judgment is reversed and rendered.