STATE of Texas, Appellant,

v.

Lester Ernest HARRIS and 700 Assorted Containers of Alcoholic Beverages, Appellees.

STATE of Texas, Appellant,

v.

Lester Ernest HARRIS, d/b/a Artists of Dallas Club, and Approximately 606 Containers of Alcoholic Beverages, Appellees.

Nos. 15750, 15751.

Court of Civil Appeals of Texas.

Dallas.

Dec. 2, 1960.

Rehearing Denied Dec. 30, 1960.

Will Wilson, Atty. Gen., and John L. Estes, Asst. Atty. Gen., for appellant.

J. P. Moseley, Dallas, for appellees.

THOMAS, Justice.

These are two alcoholic beverage forfeiture suits filed by the State of Texas by the Attorney General against Lester Ernest Harris, appellee, concerning alcoholic beverages seized by agents of the Texas Liquor Control Board under the provisions of Art. 666, § 42(a), Vernon's Texas Penal Code, and sought to be forfeited under § 42(b) of that Article. The trial court heard testimony in both cases at the same time, thus there is only one statement of facts. The cases were consolidated, argued and submitted to this Court at the same time.

The cases were tried to the court without the intervention of a jury. The trial court held that the alcoholic beverages seized by the appellant were not illicit beverages as defined in the Texas Liquor Control Act (hereinafter sometimes called the Act), and ordered that the State be denied its prayer for forfeiture and that the seized beverages be returned to the defendant by the Texas Liquor Control Board, herein referred to as the Board.

Appellant's only point of error complains that the trial court erred in finding the beverages in question not to be illicit and entering judgment for the appellee. It is our opinion that the undisputed material facts show that the alcoholic beverages in question are "illicit beverages" within the meaning of the Act and that appellant's point of error should be sustained.

The provisions of the Act (Art. 666–1 et seq., and Art. 667–1 et seq., Vernon's Texas Penal Code) applicable here are:

Art. 666–2. "This entire Act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose."

Art. 666–3a. "(1) 'Alcoholic Beverage' shall mean alcohol and any beverage containing more than one-half of one per cent ($1\frac{1}{2}$ of 1%) of alcohol by volume which is capable of use for beverage purposes, either alone or when diluted."

Art. 666–3a(4). "'Illicit Beverages' shall mean and refer to any alcoholic beverage * * * bought, sold, * * * stored, possessed * * * in violation * * * of this Act."

Art. 666–4a. "It shall be unlawful for any person to * * * sell, possess for the purpose of sale, * * * store, solicit orders for, take orders for * * * any liquor in any wet area without first having procured a permit of the class required for such privilege."

Art. 666–3a(6). "'Person' shall mean and refer to any natural person or association of natural persons, trustee, receiver, partnership, corporation, organization, or the manager, agent, servant, or employee of any of them."

Art. 667–3. "It shall be unlawful for any person to manufacture or brew beer for the purpose of sale, or to import into this State, or to distribute, or to sell any beer, or to possess any beer for the purpose of sale within this State without having first obtained appropriate license as herein provided, which license shall at all times be displayed in some conspicuous place within the licensed place of business."

Art. 666–3. "(a) The term 'open saloon' as used in this Act, means any place where any alcoholic beverage whatever * * *

is sold or offered for sale for beverage purposes by the drink * * *."

Art. 666–3. "(b) It shall be unlawful for any person, whether as principal, agent or employee, to operate or assist in operating, or to be directly or indirectly interested in the operation of any open saloon in this State."

Art. 666–42(a). "All illicit beverage as defined in this Act * * * may be seized * * * by an agent or employee of the Texas Liquor Control Board."

Art. 666–42(b). "It shall be the duty of the Attorney General * * * when notified by the officer making the seizure, or by the Texas Liquor Control Board, that such seizure has been made, to institute a suit for forfeiture of such alcoholic beverages * * *. If upon the trial of such suit it is found that the alcohol beverages are illicit * * * the court trying said cause shall render judgment forfeiting the beverages and property to the State of Texas. * * *"

The alcoholic beverages involved were seized partly on October 28, 1958, and partly on March 22, 1959 when agents of the Board entered a place of business known as Artists of Dallas Club, located at 418½ North St. Paul Street, Dallas, Texas by authority of valid search warrants. In its original petitions the State alleged that the seized alcoholic beverages were and are illicit beverages as that term is defined in Sec. 3a(4) and Sec. 4 of 666, V.P.C., in that the beverages were possessed for the purpose of sale upon the above described premises which are located in a wet area and that neither appellee nor any other person held a valid permit authorizing the sale of such alcoholic beverages at such location.

The Artists of Dallas Club is located on the second floor of a two-story building at 418½ North St. Paul Street, Dallas, in a wet area. No one held a valid permit authorizing the sale of alcoholic beverage at such location. Appellee owns and operates the Club for the benefit of the members of Local 147, American Federation of Musicians, a labor union. He sells food there. There are several club rooms. One is a barroom, with a bar, backbar, tables, chairs, cash register, cooler boxes and a cabinet built onto the wall behind the bar. When the first search was made, on October 28, 1958, some 444 twelve-ounce containers of beer as well as soft drinks were found in the cooler boxes. In the cabinet were found 162 containers of liquor, including wine, whiskey and gin. A number of persons were in the club room when the search occurred. At the time of the second search, March 22, 1959, similar conditions were found to exist except as to the number of containers of beer and liquor.

An undercover agent of the Board testified that on October 25, 1958, and again on March 15, 1959, he was admitted to the Club with another person who was not identified and who did not testify; that on the first occasion they were admitted by appellee and on both occasions purchased whiskey and beer paying cash therefor upon being served by a waiter, samples of which were introduced in evidence. Appellee emphatically denied that he had ever seen the undercover agent until the date of the trial, and was certain that it was not possible that anybody sold him a bottle of beer or a bottle of whiskey at the Club, because no one could get any service there at any time or under any conditions unless a member first signed a printed form or "ticket" for the service desired.

The trial court in an oral opinion at the close of the trial stated that unless appellee knew the waiters violated the law he (the court) could not charge appellee with their acts, and that he did not think the State had maintained its burden of proof of showing that appellee had knowledge of the violation, "if there was a violation."

If forfeiture of the alcoholic beverages involved herein-depended upon the purported sales to the undercover agent, the judgment of the trial court would have to

be affirmed. There was a clear-cut conflict in the evidence with reference to the two sales which the Court resolved against the State. From this appellee contends that the trial court's judgment should in all things be affirmed. However, appellee overlooks other facts which are undisputed and were testified to by the appellee himself and his witnesses that are controlling here regardless of whether or not any sales were made to the undercover agent. These facts show conclusively that the alcoholic beverages involved were stored and possessed for the purpose of sale to the members of Local 147.

William T. Harris, President of Local 147, American Federation of Musicians, and Vice-President of the American Federation of Musicians National, testified that the Local Union voted to establish a Club at the premises involved and set up a kind of locker system with the liquor; that after a short time the local union put up the money and bought all of the liquor to supply the members; that appellee is connected with the musicians' Club in the capacity of dispensing the beverages, he manages and runs the Club; that when a member goes to the Club and orders drinks he signs "little pieces of paper" and when he leaves he pays them off by leaving the money there for the amount of whiskey that has gone out of the bottles belonging to the Local together with the service charge for set-ups or mixes, and this latter charge is what appellee gets.

An employee of Shamrock Liquor Store testified that he received orders for Local 147 once or twice a week for beer and liquor which is delivered and billed to the American Federation of Musicians members Local 147.

Appellee further testified that all of the liquor and beer seized belonged to the American Federation of Musicians Local 147; that he merely dispensed it to the members of the union or their guests and collected enough money from the member ordering beverages for himself or guests

to cover cost of beverages consumed, the rent and other expenses; that no one could get any service at the Club unless he is a member and first signed an order form; that no money is paid at the time of the service, but the member has to pay for all orders he has signed before he leaves the Club; the money is put in the cash register and used to replace the stock of beverages and to pay the service charge and for his labor and expenses; that he keeps the doors to the Club locked at all times and either he or the doorman supervises personally all who come into the Club; that at one time they had a system under which each member would have his own bottle with his name on the label, and from this bottle the member owning it would be served, but that system had not been used for two or three years; that a charge of 60¢, for instance, is made for a whiskey and water drink, but the money is not separated as to the amount which is for the liquor and the amount for the set-ups and service; that as to beer, "the members already own the beer", and all he does is to serve it to them when they want it, charging them enough to replace the beer and a service charge to make some money out of it himself; that he usually charges 40¢ for premium beer and 35¢ for the cheaper beer.

Both the appellee and the President of Local 147 insisted that the alcoholic beverages are not being sold, stored or possessed for the purpose of sale by the method of operation used by appellee, Artists of Dallas Club or Local 147, but that the beverages already owned by the members are "dispensed" or "served" to them. The American Federation of Musicians Local 147 is a bona fide labor organization with an excellent reputation and standing in Dallas County. The President as well as appellee are highly respected citizens with splendid records of civic, political and charitable activities.

 Appellee fails to recognize that the right to possess and use alcoholic beverages is not an inherent right, but a

highly guarded privilege surrounded by many stringent regulations. Anderson v. State, 147 Tex.Cr.R. 410, 181 S.W.2d 78, 79. Significantly, under the Texas Liquor Control Act, Local 147 is a "person" separate and distinct from its constituent members, being an "association of natural persons", Art. 666–3a(6). Like a corporation it is an artificial person—a creature of the law. Of course, its members, as do shareholders in a corporation, have certain equitable and beneficial rights in its business and assets, but the natural persons forming its membership are not identical to Local 147 for purposes of the Act. When beverages are purchased from the retail liquor store the title thereto vests in Local 147. When a member acquires a container of beer or a glass of liquor and pays a predetermined sum therefor including the service, he has acquired for consumption not only any equitable or beneficial interest he might have been entitled to but also the interests of each of the other members. He has bought and paid for something he did not own before the transaction. This is a sale under the accepted definition that: "A sale may be defined as a transfer of personal property from one person to another for a price in money or for property of an agreed money value." 37–A Tex.Jur. "Sales" p. 88.

Appellee refers us to no authorities indicating transactions such as involved here are not prohibited by the Act and we know of none. On the contrary, many similar devices to escape the inconveniences of liquor regulatory acts have been unsuccessful in Texas Courts. From the early years of liquor regulation in Texas our Courts have looked at the substance rather than the form of each attempted method of escape, and have not been deceived by a mere play on words.

In 1897 Hurt, Presiding Judge, in Krnavek v. State, 38 Tex.Cr.R. 44, 41 S.W. 612, 614 in regard to an arrangement much like the Artists of Dallas Club said: "The question here is whether the sale of intoxicants by the managing steward or bartender of the club to one of the members of the said club is a sale. We are of the opinion that it is. When the intoxicants were bought by the steward, or any other member of the club, with the funds of the club, they became the property of the corporation and a sale by the steward of said corporation to any of the members was a sale, as that term is defined. It was the separation of the property of the club, and the transfer of the same to an individual member, for which he either paid the cash, or became responsible therefor. As testified in this case, this transaction between defendant and the alleged purchaser was brought fairly and clearly within the definition of 'sale,' as that term is defined in all the law books. This is not a case where parties contribute sums of money and purchase intoxicants therewith, and divide them pro rata among themselves; but it is a transaction where the common assets of a continuing business are used to replenish the goods sold in that business." See Adkins v. State, 1906, 49 Tex.Cr.R. 524, 95 S.W. 506 and Feige v. State, 1906, 49 Tex. Cr.R. 513, 95 S.W. 506. Williams v. State, 132 Tex.Cr.R. 188, 103 S.W.2d 380.

In Adams v. State, 1912, 66 Tex.Cr.R. 220, 145 S.W. 940, 942, the Court said: "The evidence shows that the incorporated club purchased liquors in bulk with money in the treasury, and sold or dispensed the liquors to its members at the usual or customary price. This we think constitutes a sale under all the rules of law. If any given number of persons organize an association under any name whatsoever with the understanding and agreement that such goods are to be dispensed to the members in such quantities as each may desire at the usual and customary price, the member paying only for such quantity as he receives, such transaction constitutes a sale by the association to the member."

Backues v. Woods, Tex.Civ.App. Eastland 1949, 218 S.W.2d 892, 895 (Syl. 2) n. r. e., was an action to forfeit illicit beverages under the present Texas Liquor Control Act which liquor had been seized from the

Abilene Post Veterans of Foreign Wars. In reversing and rendering a judgment based on a jury finding that the seized beer was not possessed for the purpose of sale, the Court said:

"The beer was bought by Woods as an employee of the Post as a bulk purchase, with no case or bottle being segregated or designated as that of any individual member; it was paid for out of the club fund. The beer so purchased belonged to the Post. It is true that the amount of money required for the purchase, and even more, had been deposited with the Post Quartermaster and that the member making a deposit of $5 received a card which entitled him to receive 24 bottles of beer, as a person who purchases a meal ticket is entitled to a specified number of dinners. When the member asked for a bottle of beer and presented his card to be punched, he was entitled to and did receive the beer. This constituted a sale to the member at the time he presented his card and secured the beer. The possession of such beer by appellee under the circumstances, is possession for the purpose of sale."

Attorney General Gerald C. Mann rendered his opinion No. 0-1145 on August 26, 1939, to the Texas Liquor Control Board regarding operations of Houston Country Club and River Oaks Country Club in which he held:

"We do not think that there is any doubt but that the fact that the liquor is dispensed to members of these clubs by the drink, coupled with the further fact that such members are called upon to contribute money to the Revolving Fund, and that they do so contribute, so that liquor may be kept on hand, constitutes sales of liquor by the drink on the part of those who deliver the liquor to the various members, whoever they may be, and that both clubs in question are being operated as open saloons."

That opinion was held correct by Attorney General Price Daniel in his letter to the Administrator of Texas Liquor Control Board—(R-1221). General Daniel in his opinion No. V-203, dated May 21, 1947 relative to sales of liquor in a private club said:

"If an officer of a private club purchases liquor from funds furnished by individual members of the club, such liquor becomes the common property of the club. When a drink is delivered by the steward to a member, and is paid for in the manner provided by the club, it constitutes a 'sale' by the club to the individual member. (Krnavek v. State, [38 Tex.Cr.R. 44], 41 S.W. 612; Feige v. State, [49 Tex.Cr.R. 513], 95 S.W. 506; Adams v. State, [66 Tex.Cr.R. 220], 145 S.W. 940.) Such a sale is in direct violation of the provisions of Article 666-3, Paragraph (a), Vernon's Penal Code of Texas. This statutory prohibition applies equally to 'wet' areas and 'dry' areas. (Shelton v. State, [139 Tex.Cr.R. 126], 138 S.W.(2d) 1078.)"

■ The Legislature has met several times and amended the Texas Liquor Control Act in some particulars since Backues v. Woods, supra, and the Attorneys General's Opinions referred to, but has made no change in the sections of the Act applicable here. The Board has acted on this decision and said opinions as that administrative agency's construction of the Act. Such action and construction is entitled to great weight here in view of the Legislature's tacit approval thereof by inaction for more than eleven years. 39 Tex.Jur. p. 235, "Statutes" Par. 126.

Therefore, we sustain appellant's point of appeal and hold that the alcoholic beverages involved in both cases are illicit beverages and are forfeited to the State of Texas to be disposed of as provided for by Section 30 of the Act. Art. 666-30, V.T. P.C.

The judgments of the trial court are reversed and here rendered accordingly.