

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

May 26, 1966

*Amends Summary in*
*a-622*

Honorable Coke R. Stevenson, Jr.
Administrator
Texas Liquor Control Board
Austin, Texas

Opinion No. C-693

Re: Under the Texas Liquor
Control Act, whether a
fraternal club or vet-
erans club is authorized
to serve alcoholic bev-
erages already owned by
a member of such club to
such member and receive
a service charge there-
for without first ob-
taining a private club
registration permit and
related questions.

Dear Mr. Stevenson:

In your request for an opinion of this office, you have
called our attention to various sections of the Texas Liquor
Control Act (Articles 666-1 et seq. and 667-1 et seq., Vernon's
Penal Code) with reference to prohibited "sales" and the per-
missible act "to serve" alcoholic beverages as follows:  Para-
graphs (a) and (b) of Article 666-3; Article 666-4, paragraphs
(a) and (b); Article 667-3; Article 666-15(e), paragraphs 5,
7(a) and /12/.  Vernon's Penal Code Article numbers are used
throughout this opinion.  Paragraph /12/ of Article 666-15(e)
provides that:

". . . nothing in Section 15(e) of Ar-
ticle I /Article 666-15(e), V.P.C./ of the
Texas Liquor Control Act shall apply to
Fraternal or Veterans Clubs."

You then state in your request:

"In order to reconcile the above stat-
utes the Texas Liquor Control Board has
distinguished between an act of serving
an alcoholic beverage owned by a member of
a club to such member for a service charge
and an act of selling an alcoholic beverage
owned by the club or an employee of the
club to any person whether a member or not
for a price.  The Board has permitted the

holder of a Private Club Registration Permit to serve alcoholic beverages already owned by a member of such club to such member and his family and his guests and to charge a service charge therefor. However, the Texas Liquor Control Board has taken action to cancel a Private Club Registration permit when the holder thereof has sold any type of alcoholic beverage to any person whether a member or not.

"Prior to your opinion No. C-622 the same distinction was made with reference to Fraternal Clubs and Veterans Clubs. That is to say, a Fraternal Club or a Veterans Club was permitted to serve an alcoholic beverage already owned by a member of such club to such member for a service charge. However, Fraternal Clubs and Veterans Clubs were asked to refrain from selling alcoholic beverages.

"After your opinion No. C-622 questions have arisen, because the writer of such opinion did not make the distinction above stated."

Your request asks the opinion of this office on the following questions:

"1. Is a Fraternal Club or Veterans Club authorized to serve alcoholic beverages already owned by a member of such club to such member and receive a service charge therefor without first having obtained a Private Club Registration Permit?

"2. Does Section 3 of Article I /Article 666-3/ of the Texas Liquor Control Act prohibit a Fraternal Club or a Veterans Club from selling distilled spirits by the drink to any person?

"3. Does Section 4, (a) of Article I /Article 666-4(a)/of the Texas Liquor Control Act prohibit a Fraternal Club or a Veterans Club from selling liquor to any person without first having obtained a permit authorizing the sale of liquor?

"4. Does Section 3 of Article II /Article 667-3/ of the Texas Liquor Control Act prohibit a Fraternal Club or Veterans Club from selling beer to any person without first having obtained a license authorizing the sale of beer?

"5. Does Section 4, (b) of Article I /Article 666-4, paragraph (b)/ of the Texas Liquor Control Act prohibit a Fraternal Club or Veterans Club from selling liquor or beer in a dry area to any person?"

Answering your questions in the above sequence, the first question is answered "Yes." A Fraternal or Veterans Club is not excluded from the right to serve alcoholic beverages already owned by such a club member and to receive a service charge therefor without first having obtained a Private Club Registration Permit.

This office previously held in its Opinion No. C-622 (1966) that Fraternal or Veterans Clubs are "exempt" and not "excluded" from the provisions of Article 666-15(e); that these clubs are not required to obtain a permit and are not in violation of the law or acting illegally in serving alcoholic beverages to their members on their premises without a license or permit.

Paragraph 5 of Article 666-15(e) provides, in part, as follows (emphasis ours):

"5. A Private Club Registration Permit . . . shall permit alcoholic beverages owned by members of the club to be stored, possessed, mixed, or consumed and served by the drink . . . on club premises, but only by or to members owning such alcoholic beverages or such members' families or their guests; . . ."

Paragraph 7 of Article 666-15(e) provides, in part, as follows:

"7. The Board or Administrator may cancel . . . any Private Club Registration Permit . . . upon finding that the permittee Club has:

"(a). Sold . . . any liquor whatsoever so as to constitute an open saloon as defined in Section 3 of

the Texas Liquor Control Act."

A holding that Veterans or Fraternal Clubs are excluded and not entitled to the permissive benefits of such law in operating a private club would necessarily involve an unconstitutional statutory construction, rendering the statute to that extent illegal class legislation. Attorney General's Opinion No. C-622 (1966), page 3. We also attempted to make it clear in that Opinion at the bottom of page 4 that:

"This opinion shall not be construed to mean that the veterans and fraternal organizations are exempted from other provisions of the Texas Liquor Control Act. . ."

These other provisions will be hereinafter discussed in connection with our answer to your remaining questions.

In answering your remaining questions 2, 3, 4 and 5, we will group these related questions together for discussion and answer, and particularly in view of the fact that our answer is "Yes" to each of them.

Article 666-3 does prohibit a Fraternal Club or Veterans Club from selling distilled spirits by the drink to any person. However, fraternal and veterans clubs may serve alcoholic beverages to its members and guests without first having obtained a permit as provided in Article 666-15(2), Vernon's Penal Code.

Paragraphs (a) and (b) of Article 666-3 provide as follows (emphasis ours):

"(a). The term 'open saloon' as used in this Act, means any place where any alcoholic beverage whatever, manufactured in whole or in part by means of the process of distillation, or any liquor composed or compounded in part of distilled spirits, is sold or offered for sale for beverage purposes by the drink or in broken or unsealed containers, or any place where any such liquors are sold or offered for sale for human consumption on the premises where sold.

"(b). It shall be unlawful for any person, whether as principal, agent, or

employee, to operate or assist in opera-
ting, or to be directly or indirectly
interested in the operation of any open
saloon in this State."

Paragraph (a) of Article 666-4 prohibits a Fraternal
or Veterans Club from selling liquor to any person without
first having obtained a permit to sell liquor.  It expressly
provides, in part, as follows (emphasis ours):

"(a).  It shall be unlawful for any
person to . . . sell . . . any liquor in
any wet area without first having procured
a permit of the class required for such
privilege."

Article 667-3 prohibits a Fraternal or Veterans Club
from selling beer to any person without first having obtained
a license authorizing the sale of liquor.  It expressly pro-
vides, in part, as follows (emphasis ours):

"It shall be unlawful for any person
to . . . sell any beer . . . within this
State without having first obtained ap-
propriate license as herein provided, . . ."

Paragraph (b) of Article 666-4 prohibits a Fraternal
Club or Veterans Club from selling liquor or beer in a dry
area to any person.  Its express provisions read in part
(emphasis ours):

"(b).  It shall be unlawful for any
person in any dry area to . . . sell
. . . any liquor, distilled spirits,
whiskey, gin, brandy, wine, rum, beer
or ale."

We approve and are in agreement with your administrative
interpretation, construction, and practice under the above
cited statutes distinguishing between the act of serving alco-
holic beverages owned by a member of a club to such member for
a service charge and the entirely separate act of selling such
beverages owned by the club, or one of its employees or agents,
to any person, whether or not a member, for a price.  Such act
of serving beverages owned by the club member, to him, his
family and guests, whether the club be one with a private club
registration permit or a Fraternal or Veterans Club not re-
quired to have such permit, is entirely legal.  The act of
selling such beverage owned by the club, or one of its employ-

ees, to a club member, or any other person, for a price is illegal as shown by the above cited statutes. This consistent departmental or administrative construction has been followed since 1961, when Article 666-15(e) became effective. It will ordinarily be given great weight and adopted by the courts as a part of the law itself under such circumstances. 53 Tex. Jur.2d 259, 263, Statutes, Sec. 177; State v. Harris, 342 S.W.2d 177 (Tex.Civ.App. 1960, no history). Furthermore, the Legislature has twice met in regular session and must be deemed to have acquiesced in and accepted such interpretation under the above authority.

This distinction and interpretation arises from the addition of Article 666-15(e) to the Liquor Control Act, by the Fifty-Seventh Legislature in Regular Session (H.B. 892, ch. 262, Sec. 1, p. 559), wherein a regulatory system involving permits was set up for "Private Clubs", and both a "Locker System" and "Pool System" were recognized as being legal, the latter only in "wet" areas. Prior to 1961, only the locker system was recognized as a legal means of operation to avoid what might otherwise have been deemed a mere shift or device to evade the law prohibiting "sales."

In Opinion No. V-203 (1947), this office held that normally when individual members furnished their funds to an officer of a private club, whether in a "wet" or "dry" area, such liquor became the common property of the club. Thereafter, when a drink is delivered by the steward to a member and paid for in the manner provided by the club, an illegal sale resulted by the club to the member, violating Article 666-3, para. (a). See also in this connection our Opinions Nos. O-1145 (1939), O-7139 (1946) and R-1221 (1948); Krnavek v. State, 41 S. W. 612 (Tex.Crim. 1897); Feige v. State, 95 S.W. 506 (Tex.Crim. 1906); Adams v. State, 145 S.W. 940 (Tex.Crim. 1912); Backues v. Woods, 218 S.W.2d 892 (Tex.Civ. App. 1949, error ref. n.r.e.); Suburban Club, Inc. v. State, 222 S.W.2d 321 (Tex.Civ.App. 1949, error ref. n.r.e.); State v. Harris, supra; State v. Garcia, 348 S.W.2d 231 (Tex.Civ. App., 1961, no history); and Texas Liquor Control Board v. Tishlias, 351 S.W.2d 562 (Tex.Civ.App. 1961, error ref. n.r.e.).

However, in Opinion No. V-203 (1947), supra, this office recognized a significant distinction between a method of operation involving an illegal sale, wherein the member was deemed to have bought the club's liquor, and a method of legal operation not involving a sale, wherein the member may be said to have simply been delivered or served his own liquor under the locker system, wherein we stated:

"We wish to point out that the method of operation involved here is to be distinguished from the one . . . being used . . . over the state, where individual lockers are provided for the members of the club. In those situations, there would not be a sale of liquor, and it would not be purchased by the treasurer out of funds belonging to the club thereby becoming the property of the club."

This distinction and practice was recognized by the Legislature in 1961, when in adding Article 666-15(e), they sought to recognize not only the "Locker System" in subparagraph (b) but also the "Pool System" in subparagraph (c) as follows:

"(b). 'Locker System' shall mean that system of alcoholic beverages storage whereby the club rents to its members lockers wherein the member may store alcoholic beverages for consumption by himself or his guests. All such alcoholic beverages so stored under the 'locker system' shall be purchased and owned by the member as an individual.

"(c). 'Pool System' shall mean that system of liquor storage where all members of the pool participate equally in the purchase of all alcoholic beverages and the replacement of all alcoholic beverages is paid for by moneys assessed and collected in advance from each member equally. Such pool system shall be legal only in an area which has been voted 'wet' for all alcoholic beverages by the majority of voters at an election held under local option."

In connection with the above quoted subparagraphs (b) and (c), we have previously quoted paragraph 5 of Article 666-15(e), authorizing a permit, which gave legal sanction to the practice of club members to store, possess, mix, consume, and to be served their liquor by the drink on club premises. Through the "Pool System" members could thereby own their liquor served to them in the private club, defined and regulated in subparagraph (a) of Article 666-15(e).

It is, therefore, the opinion of this office that by reason of the statutory change above noted, the previous opinions and case authorities cited, as applied to the "Pool System", do not control the interpretation to be given to the new law. We fully concur in the administrative practice and interpretation given by your Department to the new law since it became effective in 1961. Fraternal or Veterans Clubs are not authorized to "sell" alcoholic beverages without obtaining a permit to sell, but they are authorized to "serve" the members' liquor to them and receive a service charge therefor under Article 666-15(e), through the use of the locker or pool system, without obtaining a permit, such method not being deemed a sale within the ambit of the statute.

In the summary of our Opinion No. C-622 (1966), supra, which is technically not a part of the Opinion, we inadvertently and erroneously used the word "selling" when we intended to use the word "serving." We, therefore, by this Opinion amend the Summary of Opinion No. C-622 so that it shall hereafter read as follows:

"Fraternal or Veterans Clubs are exempt from the provisions of Article 666-15(e), V.P.C., and are not in violation thereof or acting illegally in serving alcoholic beverages to its members on its premises without a license or permit as provided for and required in such law for those not so exempt from its provisions or requirements."

## S U M M A R Y

Fraternal or Veterans Clubs are authorized to serve alcoholic beverages already owned by a member of such club to such member and receive a service charge therefor without having first obtained a Private Club Registration Permit. Article 666-3 and paragraphs (a) and (b) of Article 666-4 and Article 667-3, Vernon's Penal Code prohibit Fraternal or Veterans Clubs from selling liquor or beer to any person without first having obtained a license or permit to so sell the same. The administrative construction of the law and practice thereunder is correct in distinguishing between the legal act of serving

alcoholic beverages owned by a
member of a club to such member
for a service charge and the ille-
gal act of "selling" such beverages
owned by the club, or employee or
agent, to any person whether a mem-
ber or non-member for a price. The
use of the "Locker System" or "Pool
System" as provided for in Article
666-15(e), Vernon's Penal Code,
does not constitute an illegal "sale",
such method being in conformity to
and not an evasion of the statute.
Summary of Opinion No. C-622 (1966)
is hereby amended as set out in this
Opinion.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

KERNS B. TAYLOR
Assistant Attorney General

KBT/dt

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
Gordon Cass
Robert Flowers
J. C. Davis
John Pettit

APPROVED FOR THE ATTORNEY GENERAL
By T. B. Wright