**SUBURBAN CLUB, Inc., v. STATE.**

No. 14092.

Court of Civil Appeals of Texas. Dallas.

June 24, 1949.

Rehearing Denied July 22, 1949.

Bowyer, Gray, Thomas, Crozier & Jaffe, Dallas, for appellant.

Price Daniel, Atty. Gen., J. A. Amis, Jr., Joe H. Reynolds and William S. Lott, Asst. Attys. Gen., for appellee.

CRAMER, Justice.

This is an appeal from an order granting appellee State of Texas' application for temporary injunction enjoining the appellant "from operating an open saloon" as defined in Art. 666—3(a), Vernon's Penal Code of Texas; and from maintaining a common nuisance as defined in Art. 666 —29.

Appellant assigns three points of error, in substance: (1) The error of the court in granting the temporary injunction after appellant had introduced evidence to the effect that it had ceased all violations of the Texas Liquor Control Act and was seeking to comply with such Act and instructions from the Liquor Control Board and had no intention of violating such Act in the future; (2) the error of the court in holding appellant was maintaining a nuisance,—in effect holding appellant's club was a "public place"; and (3) error in granting the injunction in absence of the owner of the property as a party to the suit.

The evidence as to appellant's future intention and to its ceasing all violations was like all other evidence in the case —for the trier of the facts. There was testimony that at the time of the trial appellant had not completed an installation of lockers for whisky (although it had sometime theretofore stated it would do so); that a member of the club had purchased liquor from a bottle, although he had not taken the bottle to the club; that twelve days after a raid on the club a member ordered a drink that was not out of his own bottle and that on the first day of the hearing, here under review, the same procedure with reference to purchase by members of mixed drinks was followed as had been followed before the raid.

This being an appeal from a temporary injunction, we should reverse only for abuse of discretion by the trial judge. None is apparent in the first point of error.

The second point of error raises the question as to whether or not the club was a public place within the meaning of Art. 666—4, subdv. (c), which reads as follows: "(c) (1) It shall be unlawful for any person to consume any alcoholic beverage in any public place, or for any person to possess any alcoholic beverage in any public place for the purpose of consuming the same in such public place, at any time on Sunday between the hours of 1:15 a. m. and 1:00 o'clock p. m., and on all other days at any time between the hours of 12:15 a. m. and 7:00 o'clock a. m."

Art. 666—29, subdv. (a), Vernon's Penal Code, is as follows: "(a) Any room, building, boat, structure, or place of any kind where alcoholic beverages are sold, bartered, manufactured, stored, possessed or consumed in violation of this Act, or under conditions and circumstances contrary to the purposes of this Act, and all such beverages and all property kept and used in any such place, hereby are declared to be

a common nuisance; and any person who maintains or assists in maintaining such common nuisance shall be guilty of a violation of this Act."

This point of error affects that part of the temporary order enjoining a common nuisance and would not affect the prohibition against an open saloon, an open saloon being prohibited by Art. 666—3, subdv. (a), as follows: "The term 'open saloon' as used in this Act, means any place where any alcoholic beverage whatever, manufactured in whole or in part by means of the process of distillation, or any liquor composed or compounded in part of distilled spirits, is sold or offered for sale for beverage purposes by the drink or in broken or unsealed containers, or any place where any such liquors are sold or offered for sale for human consumption on the premises where sold."

The only attack is that the place of the sale during the prohibited hours was not a public place under Art. 666—4, subdv. (c) (1), supra. The evidence most favorable to the judgment, in substance, was, in part, as follows: The club was chartered under Art. 1302(9), R.C.S.1925, as a nonprofit corporation. The club earned for the "proprietors" some $26,000 a month during October and November, mostly from memberships sold to "members." A good part of this money went to pay accounts for fixtures, furnishings, etc.

"Members," who testified, stated that they did not join the "club" for the reasons set out in the charter. The "members" did not attend meetings, did not serve on membership committees, had no voting rights, acquired no interest of any kind in the "club" property. The "members" did not take bottles of liquor to the "club" and did not authorize any one to secure the bottles of liquor on which their names appeared. The "proprietors" used any bottle handy when serving drinks, regardless of the name on it; and, even after the raid of the officers, ordered liquor in members' names without their authority. Liquor was consumed in the "club room" during the hours from 1:15 a. m. to 1:00 p. m. on Sundays and between the hours of 12:15 a. m. and 7:00 a. m. weekdays, as well as at other hours.

The evidence sustained the conclusion that the "club" was operated for the sole profit of the "proprietors," and that the "members" were individuals acceptable to "proprietors" who were willing to pay a $100 cash fee and $6 per month as dues, together with taxes, for the privilege, as "members," of having liquor served to them with their meals and enjoying the music of the orchestra or dancing at the "proprietors" "club." One of the "proprietors" operated a high class restaurant next door to the so-called "club", using the same kitchen for both his restaurant and the "club." (The food orders were passed through a "Dutch" or half door between his restaurant and the "club.") The so-called "club" side was limited in its patronage to those to whom the "proprietors" chose to sell "memberships," together with their guests (sometimes numbering as many as 25 in one party). "Members" were sold their meals and liquors on credit and were liable for the charge slips they signed, as well as for those signed by their authorized guests; but the profits belonged to the "proprietors" who, alone, chose the members; and, as owners of the corporate appellant, ran the "club."

We are of the opinion that although the patronage was restricted by the "proprietors," the use of the club and its charter was a subterfuge; and the sale of liquor in the dining room of the so-called "club," under the circumstances and evidence in this case, justified the trial court in finding that "the place was operated under circumstances and conditions contrary to the purposes of the Liquor Control Act." State v. Parker, Tex.Sup., 212 S.W.2d 132, page 134. In the same case Chief Justice Hickman stated: " * * * a place cannot be closed merely because two persons drink liquor there, if that drinking is lawful and permitted by law; but it may be closed even though the drinking be lawful, if the circumstances and conditions under which the place is operated make it a nuisance in fact." The second point is overruled.

In addition to the above, the evidence justified a temporary injunction for 24 hours of the day under Art. 666—29(a) quoted above, and there could be no error in the injunction covering parts of the day.

It was not necessary that the owner of the premises involved be a party to authorize the court to grant a temporary injunction against the club here before the court. It is necessary, however, that such owner be a party before the property can be padlocked. The property can only be padlocked on a final hearing.

No property rights were involved on the hearing of the temporary injunction. Vance v. State, Tex.Civ.App., 179 S.W.2d 436. The property rights affected by padlocking will be involved only on a hearing on the merits. The third point is overruled.

From the evidence as a whole we cannot say the trial court abused his discretion. Therefore the judgment below is affirmed.