STATE of Texas, Appellant,

v.

Joe GARCIA and 206 Assorted Bottles
of Alcoholic Beverages, Appellee.

No. 13758.

Court of Civil Appeals of Texas.

San Antonio.

June 21, 1961.

Will Wilson, Atty. Gen., Tom I. Mc-Farling, Asst. Atty. Gen., Cecil Cammack, Jr., Austin, for appellant.

Paul M. Reyna, J. J. Medina, San Antonio, for appellee.

BARROW, Justice.

This is a suit by the State of Texas, acting by and through its Attorney General, for forfeiture of 206 bottles of assorted alcoholic beverages, under the provisions of Article 666–42, Vernon's Annotated Penal Code. The case was tried before the court without a jury. After plaintiff had rested its case, the defendant moved for an instructed verdict, which was granted, and the court then rendered judgment that plaintiff take nothing. This appeal is from that judgment.

■ The State first called as a witness the adverse party, Joe Garcia, who testified that on July 17, 1958, and immediately prior thereto, he was running a private club called the "Pink Elephant" at 110 West Commerce Street in San Antonio, Texas. The club was a bottle club with a membership fee of $10 a year. The members brought in bottles of liquor which were placed on a shelf behind the bar, and employees of the club would serve mixed drinks to the members, from their respective bottles. Guests could be served from the liquor of a member if the member was present. The only time a non-member could get a drink was when he was with a member. Garcia testified that to the best of his knowledge no mixed drinks were sold at any time to any non-member; that the club only sold mixes and services, but he did not know what the other employees did. All of the bottles of liquor at the club, and particularly the 206 bottles seized, which are the subject of this suit, did not belong to the club, but to the individual members, and the names of the members were on the labels attached to the bottles. These bottles were kept together on the shelf, not in individual lockers. He further testified that

he was the manager of the club at the time, and he managed the club and the other employees. Leonard Patterson was the head bartender and there was another employee by the name of Migual Rodriguez. Garcia further testified that on November 21, 1958, in Cause No. 112,441, in the County Court of Law No. 2, Bexar County, Texas, he pleaded guilty to a charge of operating an open saloon, and paid a fine because of the activities of the Pink Elephant Club on or about July 17, 1958. He testified that there was no license to sell any type of alcoholic beverages on the premises.

The State then called L. R. Barrera and Franklyn R. Painter, Inspectors for the Texas Liquor Control Board. They testified that at about 1:00 a. m. on July 12, 1958, they bought and were served at the premises a mixed drink of bourbon and water, and were charged sixty cents each for the drinks. They ordered the drinks from a waiter who went behind a screen or partition, which was between where they were sitting and the bar. They did not see the drinks being mixed or who mixed them. The waiter explained to them that the reason why they were charged sixty cents for the drinks instead of forty cents was because he had to use the Club's whiskey. Early on the morning of July 17th, they again purchased whiskey by the drink, bourbon and water, and again paid the waiter $1.20 for the two mixed drinks. They each testified that they were familiar with the taste and odor of alcoholic beverages, to-wit, bourbon whiskey, and that the drinks were on each occasion bourbon whiskey. On this last occasion, a search warrant was served on the bartender and the alcoholic beverages involved herein were seized by the Liquor Control Board Inspectors. No whiskey or any other alcoholic beverages were found on the premises besides the 206 bottles above mentioned. Nor were any bottles found at any place other than behind the bar. These witnesses were not members of the Club, nor did they own the whiskey mixed for them. The

State introduced in evidence invoices dated in July, 1958, found on the premises, for alcoholic beverages sold by Texas Liquor Stores and billed to the "Pink Elephant."

The record shows that appellee's motion was based on the ground that appellant failed to make out a prima facie case.

The pertinent provisions of Article 666, Vernon's Penal Code, are as follows:

"Art. 666—3. 'Open saloon' defined; * * *

"(a) The term 'open saloon' as used in this Act, means any place where any alcoholic beverage whatever, * * * or any liquor composed or compounded in part of distilled spirits, is sold or offered for sale for beverage purposes by the drink or in broken or unsealed containers, or any place where any such liquors are sold or offered for sale for human consumption on the premises where sold.

"(b) It shall be unlawful for any person, whether as principal, agent, or employee, to operate or assist in operating, or to be directly or indirectly interested in the operation of any open saloon in this state. * * *

"Art. 666—3a. Definitions

"The following definitions of words and terms shall apply as used in this Act: * * *

"(4) 'Illicit Beverage' shall mean and refer to any alcoholic beverage manufactured, distributed, bought, sold, bottled, rectified, blended, treated, fortified, mixed, processed, warehoused, stored, possessed, * * * kept, stored, owned, or imported with intent to manufacture, sell, distribute, bottle * * * store, or transport in violation of the provisions of this Act. * * *

"Art. 666—4. * * *

"(a) It shall be unlawful for any person to manufacture, distill, brew,

sell, possess for the purpose of sale, import into this state, export from the state, transport, distribute, warehouse, store, solicit orders for, take orders for, or for the purpose of sale to bottle, rectify, blend, treat, fortify, mix, or process any liquor in any wet area without first having procured a permit of the class required for such privilege. * * *

"Art. 666—42. * * *

"(a) All illicit beverages as defined by this Act * * * may be seized with or without a warrant by an agent or employee of the Texas Liquor Control Board, * * * and any person found in possession or in charge thereof may be arrested without a warrant. * * *

"(b) It shall be the duty of the Attorney General, * * * when notified by the officer making the seizure, or by the Texas Liquor Control Board, that such seizure has been made, to institute a suit for forfeiture of such alcoholic beverages and property, such suit to be brought in the name of the State of Texas against such beverages and property in any court of competent jurisdiction in the county wherein such seizure was made. Notice of pendency of such suit shall be served on any person found in possession of the beverages or property at the time of seizure in the manner prescribed by law and the case shall proceed to trial as other civil cases. * * * If upon the trial of such suit it is found that the alcoholic beverages are illicit, * * * then the court trying said cause shall render judgment forfeiting the beverages and property to the State of Texas * * *."

The evidence in this case clearly shows the sale of liquor to transient customers, which was sold, mixed and charged for by the drink on the premises. It is not a case where one person furnishes his own liquor and is served by some other person, such as the so-called bottle club, and we express no opinion as to the legality or illegality of that operation.

The testimony of the two witnesses is undisputed. The fact that Garcia testified the sales did not occur within his knowledge, or so far as he knew, is not a denial of the sales. The sales were made by other employees of the business. He was the manager and they were working under his control and direction. The testimony of Barrera and Painter that they bought the drinks on the occasion in question is strongly corroborated by Garcia's own admission that he pleaded guilty to operating an open saloon on that date.

■ The evidence before the court also shows the liquor seized was "Illicit Beverage" within the meaning of Section 3a(4), Article 666, supra. The alcoholic beverages were brought to and kept at the place for drinking purposes. They were all in the possession, custody and control of Garcia as manager of the place. It was from this batch or stock of liquor that the drinks were mixed and sold. The entire assortment was found in possession of a person admittedly then and there operating an open saloon. It is argued that the State failed to prove that the liquor served came from one of the 206 bottles seized, or that the Pink Elephant owned the liquor served, and that the witnesses, on account of the partition, could not see the drinks mixed. We do not agree with that contention. Art. 666—2, supra, provides:

"This entire Act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose."

Under the liberal construction of the statute, it is clear that possession, and not title or ownership, of the liquor is con-

trolling. The evidence is clear that when a sale was made to a so-called non-member, the drink was mixed and served from this stock. That was the only liquor found on the premises. It would be ridiculous to require the State to prove from which particular bottle the drink was served, to determine the ownership thereof, and then seize only the bottle from which the service was made.

We are of the opinion that the State has made out a prima facie case, and that the court erred in granting defendant's motion. Mathis v. State, Tex.Civ.App., 258 S.W.2d 200; Backues v. Woods, Tex.Civ.App., 218 S.W.2d 892; Bouldin v. State, 145 Tex.Cr. R. 413, 168 S.W.2d 868.

The judgment of the trial court is reversed and the cause remanded for further proceedings.